# Richmond.

## R. W. LEE v. COMMONWEALTH.

### January 18, 1923.

1. JURY—*Drawing in Presence of Commissioner in Chancery—Drawing in Presence of Two Reputable Citizens—Sections 4895, 5992, Code of 1919.*—In the instant case the circuit court had, by oversight, failed to designate a commissioner as required by section 4895, and for that reason the clerk proceeded to draw the list in the presence of two reputable citizens.

   *Held:* That there was no error in the denial of a motion to quash the *venire facias.* The failure of the judge to designate the commissioner was due to his oversight and was inadvertent and unintentional. The clerk construed the statute to mean that he had the right under the circumstances to follow the mode prescribed by the statute where the presence of the commissioner could not be obtained, and it is a debatable question whether this construction is not the correct one. However that may be, it did not appear that either the judge or the clerk intentionally violated the statute, or that the irregularity resulted in harm to the defendant.

2. ASSAULT AND BATTERY—*Assault with Intent to Kill—Sufficiency of Verdict not Showing Degree or Grade of Crime—Case at Bar.*—In the instant case accused was indicted for unlawfully, maliciously, and feloniously wounding one B. with intent to maim, disfigure, disable and kill him. The jury found the accused guilty as charged in the indictment and fixed his punishment at two years in the State Penitentiary. It was claimed for accused that the trial court should have set aside the verdict, because, as the punishment fixed therein could have been lawfully imposed for either unlawful or malicious maiming, it failed to inform the defendant of the offense for which he was convicted.

   *Held:* That there was no merit in this contention. The statute did not require the jury to specify the degree or grade of the crime, and, the verdict being general, the presumption is that they found the defendant guilty of the highest degree charged in the indictment and to which the punishment prescribed was applicable.

3. CRIMINAL LAW—*Conviction of Highest Offense Charged in an Indictment Equivalent to an Acquittal of Lesser Offenses—Autrefois Acquit.*—Where, in a prosecution for unlawfully, maliciously, and feloniously wound-

ing one with intent to maim, disfigure, disable and kill him, accused was convicted of the highest offense charged, this conviction was equivalent to an acquittal of all lesser ones necessarily included therein, the latter being merged in the former.

4. MAYHEM—*Instructions—Permanency of the Disfigurement.*—On a prosecution for maiming under section 4402, where it was an open question whether the wound was caused by the blow of accused's fist or by a blow with a sharp instrument, it was error for the court to refuse to instruct the jury that the accused could not be convicted of the felony charged unless they believed he intended to kill, or maim, or disfigure permanently, the prosecutor, and to give the same instruction with the word "permanently" stricken out.

5. MAYHEM—*Blow with a Sharp Instrument—Blow with the Fist—Presumption of Intention to Maim.*—Men are presumed to intend the natural and probable consequences of their acts, and a permanent disfigurement would be the natural and probable consequences of a violent blow in the face with a sharp instrument like a knife or steel knuckles. But it cannot be presumed from a blow with the fist that the striker intended to permanently disfigure his adversary.

6. MAYHEM—*Meaning of the Word "Disfigure."*—The word "disfigure" in the maiming statute means a permanent and not merely a temporary and inconsequential disfigurement.

Error to a judgment of the Circuit Court of Warwick county.

*Reversed.*

The opinion states the case.

*W. E. Hogg, J. T. Newsome* and *T. J. Christian,* for the plaintiff in error.

*John R. Saunders, Attorney-General, J. D. Hank, Jr.; Assistant Attorney-General,* and *Leon M. Bazile, Second Assistant Attorney-General,* for the Commonwealth.

KELLY, P., delivered the opinion of the court.

The indictment charged that the defendant, R. W. Lee, unlawfully, maliciously and feloniously wounded and caused great bodily harm to one S. J. Bonewell with

intent to main, disfigure, disable and kill him. The verdict upon which the court rendered the sentence here under review was as follows: "We, the jury, find the accused, R. W. Lee, guilty as charged in the indictment and fix his punishment at two years in the State penitentiary."

[1] 1. There was a motion, made before the jury was sworn, and for the specific reason indicated below, to quash the writ of *venire facias* which the trial court overruled, and this is assigned as error.

Section 4895 of the Code provides that the writ of *venire facias* for the trial of felony cases shall contain the names of proposed jurors taken from a list drawn in the presence of the judge of the court, or, in his absence, in the presence of one of the commissioners in chancery specified in section 5992, and of a reputable citizen not connected with the accused or the prosecutor, who shall be called upon for that purpose by the clerk. It is further provided in section 4895 that "if the presence of the commissioner cannot be obtained, the drawing shall be in the presence of two reputable citizens not connected as aforesaid and called upon by the clerk."

Section 5992 provides for the designation of a commissioner in chancery for the purpose above indicated by an order of court entered of record. In this instance the circuit court had, by oversight, failed to designate a commissioner as thus required, and for that reason the clerk had proceeded to draw the list in the presence of two citizens, just as he would regularly have done if there had been a duly designated commissioner whose presence could not be obtained. No question is raised here as to the character of the two citizens called upon by the clerk to witness the drawing, and we will presume that they were duly qualified and selected for that purpose.

There was no error in the denial of the motion to quash the *venire facias*. The concluding paragraph of section 4895, so far as it need be set out here, is as follows: "No irregularity * * * in the drawing of the jurors * * * shall be cause for summoning a new panel or for setting aside or granting a new trial, unless objection thereto specifically pointed out, was made before the jury was sworn, and unless it appears that such irregularity * * * was intentional or such as to probably cause injustice to the Commonwealth or to the accused."

The objection here relied upon was duly made before the jury was sworn, but it did not appear that the irregularity complained of was either intentional or harmful to the accused. The judge certifies that his failure to designate the commissioner was due to an oversight, which, of course, means that it was inadvertent and unintentional. In the situation which thus confronted the clerk he pursued the method of drawing the jurors in the presence of two citizens as provided for by the statute when "the presence of the commissioner cannot be obtained." It may be, as argued by counsel for the defendant, that this latter provision of the statute presupposes the previous regular designation of a commissioner, and does not contemplate a situation in which no such designation has been made, but this is a fairly debatable question under the language of the statute, and the clerk construed it to mean that he had the right under the circumstances to follow the method under which he acted. It does not appear that either the clerk or the judge intentionally violated the statute, or that the irregularity resulted in harm to the defendant; and this, we think, must conclude the question.

We do not understand that the conclusion here reached is in conflict with *Looney's Case*, 115 Va. 921, 78

S. E. 625, and *Patrick's Case*, 115 Va. 935, 78 S. E. 628, which are cited and apparently relied upon with great confidence by counsel for the defendant. In both of these cases the court held that there had been an intentional violation of mandatory terms of the statute.

[2, 3] 2. Another assignment of error is that the court ought to have set aside the verdict because, as the punishment fixed therein could have been lawfully imposed for either unlawful or malicious maiming, it failed to inform the defendant of the offense for which he was convicted. There is no merit in this contention. The statute did not require the jury to specify the degree or grade of the crime, and, the verdict being general, the presumption is that they found the defendant guilty of the highest degree charged in the indictment and to which the punishment prescribed was applicable. Beale's Cr. Pl. and Pr., sec. 308; 16 Corpus Juris 1109 and cases cited in note 55. His conviction of the highest offense charged was equivalent to an acquittal of all lesser ones necessarily included therein, the latter being merged in the former. *Canada's Case*, 22 Gratt. (63 Va.) 905; *Stuart's Case*, 28 Gratt. (69 Va.) 950.

[4] 3. For the purposes of the next assignment of error a very brief and general statement of facts will suffice. Bonewell and Lee had a sudden quarrel, followed immediately by an encounter which up to a certain stage was merely a fist fight. "Several licks were passed" but the one blow that landed was a final lick by which Lee struck Bonewell in the face. As to this blow there was a conflict of evidence. The version given by the witnesses for the Commonwealth tended to show that Bonewell had withdrawn from the fight and was in the act of getting into his automobile when Lee struck him in the face, and that the injury thereby caused, in the opinion of the attending physician, could not have

been inflicted by a man's fist, but must have been done by a sharp instrument of some sort like "the end of a broken automobile spring, or blade of a knife, or the edge of steel knuckles." The testimony on behalf of the accused, on the other hand, tended to show that the lick in question was struck while the fight was still in progress, and that no other weapon than the defendant's fist was used. The result of the blow was an incised wound through the nose down to the cheek bone, which required six stitches on the outside and three subcutaneous stitches in the nose; but the recovery therefrom was so complete that at the time of the trial, about seven months later, no mark or scar therefrom was visible.

In this state of the evidence counsel for Lee asked the court to give the following instruction: "The court instructs the jury that the accused cannot be convicted of felony charged unless you believe he intended to kill, or maim, or disfigure permanently, the prosecutor in this case." The court refused to give this instruction as asked, but gave it with the word "permanently" stricken out, and the defendant excepted.

[5, 6] If we could say that the jury accepted the Commonwealth's theory in its entirety and believed that Lee followed Bonewell after he had withdrawn from the fight and dealt him a blow with a sharp instrument like a knife or steel knuckles, we would readily hold that there was no error in refusing the instruction as asked. Men are presumed to intend the natural and probable consequences of their acts, and a permanent disfigurement would be the natural and probable consequence of a violent blow in the face with such a weapon. But it may be the jury believed that although Bonewell had withdrawn, and that Lee did follow and strike him in retreat, he used no instrument but his fist. None of the witnesses even for the Commonwealth saw any weapon

37

of any kind in his hand, and the theory of the Commonwealth in this particular depends entirely upon the expert or opinion evidence of the physician. If Lee only used his fist, then there would be no presumption from that fact alone that he intended to permanently disfigure his adversary, and yet some temporary disfigurement would naturally be expected, and would almost necessarily follow, from such a blow. The word "disfigure" in the maiming statute (Code, sec. 4402), under which this indictment was found, means a permanent and not merely a temporary and inconsequential disfigurement. *Vawter's Case*, 87 Va. 245, 12 S. E. 339; 1 Russ. Cr. 598; 26 Cyc. p. 1600.

In *Vawter's Case, supra*, the prisoner asked for and the trial court refused an instruction in the following form: "The court instructs the jury that the intent to disable charged in the indictment must be understood as of a permanent disability and not merely one which may be temporary." In the opinion of the court Judge Lewis said: "As an abstract proposition this instruction is right, but as there is no certificate either of the facts or of the evidence we are not able to perceive from the record whether or not this instruction was relevant to the case before the jury; and if it was not relevant, then there was no error in refusing to give it." The converse of this latter proposition is clearly true, namely, that if such an instruction is relevant to the facts of a case, the refusal to give it is error. In this case it was relevant. No adequate substitute was given to the jury, and the absence of such an instruction might have misled them if they believed that Lee struck Bonewell after he had retreated, but used no weapon.

It follows, therefore, that the court erred in refusing to give the instruction here under consideration, and, upon the particular facts of this case, we are unable to

say that the defendant might not have been very seriously prejudiced thereby.

4. The remaining complaint urged against the judgment is that the evidence was not sufficient to support a verdict for malicious wounding. As the case must go back for a new trial, we refrain from expressing any opinion upon this branch of the case.

The judgment complained of, for the reason above indicated, will be reversed; the verdict of the jury set aside, and the cause remanded for a new trial to be had not in conflict with the views herein expressed.

*Reversed.*