COURT OF APPEALS OF VIRGINIA


Present:  Judges Frank, Humphreys and Senior Judge Overton
Argued at Chesapeake, Virginia


CHRISTOPHER MICHAEL CARNES

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 2016-02-1          JUDGE ROBERT J. HUMPHREYS
                                          JULY 1, 2003
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                      Randolph T. West, Judge

            Warren F. Keeling for appellant.

            Paul C. Galanides, Assistant Attorney General
            (Jerry W. Kilgore, Attorney General; Margaret
            W. Reed, Assistant Attorney General, on
            brief), for appellee.


     Christopher Michael Carnes appeals his conviction,

following a bench trial, for malicious wounding, in violation of

Code § 18.2-51.  Carnes contends the trial court erred in

finding the evidence sufficient, as a matter of law, to support

the conviction.  For the reasons that follow, we affirm the

judgment of the trial court.

     In accordance with settled principles of appellate review,

we state the evidence presented at trial in the light most

favorable to the Commonwealth, the prevailing party below.

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.  Further, because this opinion has
no precedential value, we recite only those facts essential to
our holding.

<u>Burns v. Commonwealth</u>, 261 Va. 307, 313, 541 S.E.2d 872, 877 (2001).

On December 14, 2001, Mark A. Reed was at home with his three sons.  That evening, he received a telephone call from Carnes, who asked to speak with his sons.  Because he was "tired of kids coming over a lot," Reed told Carnes that his sons were not home.  A few moments later, Reed heard a knock at his front door.  Reed's two older sons answered the door and spoke to the individual who had knocked, through the closed screen door.

After a few seconds, Reed approached and saw that it was Carnes at the door.  Reed told Carnes to leave.  Carnes responded that "[he] was not leaving."  Reed said, "I think you're here for no good . . . I'm asking you to leave my property."  Carnes began "yelling," and "cussing" at Reed, "saying he wasn't going to do this and wasn't going to do that," "he didn't have to leave and there's nothing [Reed] could do about it . . . ."  Reed again told Carnes to leave and told his wife, who was standing inside the home, to call the police.  Carnes still refused to leave.

A few moments later, Reed went out onto the porch and again asked Carnes to leave.  Reed told Carnes, "You need to leave.  You're here to cause trouble and I don't want any trouble.  We really don't want you here.  You're too old to be hanging around my sons, anyway, you know.  I just want you to leave."  However, Carnes again refused to leave and stated, "he was going to smoke

- 2 -

dope and do drugs and there wasn't anything [Reed] could do about it, he could do it at [Reed's] house if he wanted to."

At that time, Reed put one hand on Carnes's shoulder and one hand on his back, "to escort [Carnes] off [Reed's] porch." Carnes backed up and said he was not leaving. Carnes then looked "towards his [own] hand" and said, "You see this?" Reed asked, "What?" When Reed glanced down, he saw "something in [Carnes's] hand." Reed could not identify the object, but saw that it was shiny. He told Carnes, "Well, you're not going to hit me. Just leave." As Reed looked away, Carnes hit Reed in the face. Reed was stunned and felt blood running down his face. Carnes swung at Reed again, but Reed was able to partially block the punch. Reed then grabbed Carnes around the head and neck, to hold him until the police arrived.

At that point, Carnes's friend, Jason Critzer, walked onto the porch. Reed told him to stop. Reed's sons then joined the others on the porch. One of Reed's sons hit Carnes, so Reed let go of Carnes, because he "didn't think that was right." Carnes then ran into the front yard, yelling, "I'll be back. You're going to get it. I'll be back with my friends."

Shortly thereafter, the fire department arrived. Fire department personnel looked at Reed's wounds and advised him to go to the emergency room for treatment. Reed received four stitches over his eye.

Carnes was subsequently arrested for, and later indicted for, malicious wounding, in violation of Code § 18.2-51. During Carnes's trial, Reed testified for the Commonwealth as to the events set forth above. Reed stated that it was dark when Carnes came to his home that evening. He said that when he walked out onto the porch, the only light was coming from Christmas lights "blinking off and on." Reed further testified that he may have pushed Carnes off of the porch, just before Carnes ran into the front yard and threatened to return with his friends.

At the close of the Commonwealth's evidence, Carnes raised a motion to strike, stating:

> Your Honor, at this point, I would move to strike the charge as being malicious wounding. We have evidence that he came to see that man's sons. He didn't come to see him. There's no evidence that he had a deadly weapon. There is no evidence that there were such repeated violent blows that you could infer intent to be a malicious wounding. There is no situation that these two men are so different in age or physical ability that he was taking advantage of somebody's incapacity. So at this point, may it please the Court, I would ask the Court to strike malicious.

The trial court denied the motion.

Carnes testified that he went to Reed's home to get some of his personal items from Reed's son. He contended that Reed's son had stolen the items from him. Reed's son opened the door, but told Carnes that he was not going to return the items and then closed the door. According to Carnes, Reed came to the door a

few moments later, walked out onto the porch, and began yelling at him. Reed called him a "drug addict" and told him he had to leave. Carnes testified that he told Reed he did not want any trouble and that he turned and began to walk away. However, Reed pushed him from behind. Carnes stated that he hit Reed, only after being pushed a number of times. Carnes further stated that he wore a "class-style" ring on the hand that he hit Reed with, but claimed he held nothing in his hand. He testified Reed grabbed him by the neck and held him over the top of the brick wall surrounding the porch. After Reed loosened his grip, Carnes "kind of fell over" and left.

At the close of his evidence, Carnes renewed his motion to strike, alleging that the evidence proved unlawful wounding, but not malicious wounding. The trial court denied the motion and convicted Carnes of malicious wounding, sentencing him to ten years in prison, with six years suspended upon certain conditions.

On appeal, Carnes contends the trial court erred in finding the evidence sufficient, as a matter of law, to support the conviction for malicious wounding. Carnes argues the evidence failed to establish that he went to the Reed home with the intent "to do anyone harm." We find no error in the trial court's determination and, therefore, affirm the conviction.

As stated above,

> [w]hen reviewing the sufficiency of the
> evidence after a conviction, we consider
> that evidence in the light most favorable to
> the Commonwealth, and we affirm the
> conviction unless it is plainly wrong or
> without evidence to support it.  Horton [v.
> Commonwealth, 255 Va. 606, 614, 499 S.E.2d
> 258, 262 (1998) (citing Higginbotham v.
> Commonwealth, 216 Va. 349, 352, 218 S.E.2d
> 534, 537 (1975))].  The circuit court
> sitting without a jury in this case acted as
> the fact finder; hence, the court's judgment
> is accorded the same weight as a jury
> verdict.  Evans v. Commonwealth, 215 Va.
> 609, 613, 212 S.E.2d 268, 271 (1975).  As
> the fact finder, the court "need not believe
> the accused's explanation and may infer that
> he is trying to conceal his guilt."  Black
> v. Commonwealth, 222 Va. 838, 842, 284
> S.E.2d 608, 610 (1981).

Shackleford v. Commonwealth, 262 Va. 196, 209, 547 S.E.2d 899,

906-07 (2001).

Code § 18.2-51 provides as follows:

> If any person maliciously shoot, stab, cut,
> or wound any person or by any means cause
> him bodily injury, with the intent to maim,
> disfigure, disable, or kill, he shall,
> except where it is otherwise provided, be
> guilty of a Class 3 felony.  If such act be
> done unlawfully but not maliciously, with
> the intent aforesaid, the offender shall be
> guilty of a Class 6 felony.

Thus, the statute defines two crimes:  malicious wounding and the

lesser-included offense of unlawful wounding.  The element of

malice distinguishes the two crimes.  See Miller v. Commonwealth,

5 Va. App. 22, 24, 359 S.E.2d 841, 842 (1987).  In order to

sustain a conviction for malicious wounding, the Commonwealth

must therefore prove that the bodily injury was caused with

- 6 -

malice, and "with intent to maim, disfigure, disable, or kill." Code § 18.2-51.

"'"Malice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will. It may be directly evidenced by words, or inferred from acts and conduct which necessarily result in injury."'" Hernandez v. Commonwealth, 15 Va. App. 626, 631, 426 S.E.2d 137, 140 (1993) (quoting Christian v. Commonwealth, 221 Va. 1078, 1081, 277 S.E.2d 205, 207 (1981) (quoting Dawkins v. Commonwealth, 186 Va. 55, 61, 41 S.E.2d 500, 503 (1947))). "Malice is evidenced either when the accused acted with a sedate, deliberate mind, and formed design, or committed any purposeful and cruel act without any or without great provocation." Branch v. Commonwealth, 14 Va. App. 836, 841, 419 S.E.2d 422, 426 (1992). "Whether malice existed is a question for the fact finder." Robertson v. Commonwealth, 31 Va. App. 814, 823, 525 S.E.2d 640, 645 (2000).

"Intent in fact is the purpose formed in a person's mind, which may be shown by the circumstances surrounding the offense, including the person's conduct and his statements. And a person is presumed to intend the immediate, direct, and necessary consequences of his voluntary act." Nobles v. Commonwealth, 218 Va. 548, 551, 238 S.E.2d 808, 810 (1977) (citations omitted).

Carnes correctly states that blows inflicted with bare fists do not generally imply malice, much less an intent to kill, disable, disfigure or maim the victim. See Carson v. Commonwealth, 188 Va. 398, 406, 49 S.E.2d 704, 707 (1948); see

- 7 -

also Roark v. Commonwealth, 182 Va. 244, 250, 28 S.E.2d 693, 695-96 (1944). However, such blows "'may be attended with such circumstances of violence and brutality'" to allow the trier of fact to infer that the defendant possessed the requisite intent. Dawkins, 186 Va. at 64, 41 S.E.2d at 504 (quoting M'Whirt's Case, 3 Gratt. (44 Va.) 594 (1846)). Moreover, when viewed in the light most favorable to the Commonwealth, the evidence, and reasonable inferences which flow from it, demonstrate that Carnes struck Reed with something more than his bare fist. Reed testified that just before striking him, Carnes looked "towards his hand" and said, "You see this?" When Reed looked, he saw a shiny object. Carnes then hit Reed, causing an injury which drew blood and required several stitches to close the wound. Carnes testified he had nothing in his hand, but conceded that he wore a "class-type" ring on that hand.

The courts of this Commonwealth have long held that "[t]he color of the act [at issue] determines the complexion of the intent only in those situations where common experience has found a reliable correlation between a particular act and a corresponding intent." Banovitch v. Commonwealth, 196 Va. 210, 217, 83 S.E.2d 369, 373 (1954) (citations omitted). In Lee v. Commonwealth, 135 Va. 572, 115 S.E. 671 (1923), albeit in dicta, the Supreme Court of Virginia specifically noted that if an injury were inflicted by means of a "knife or steel knuckles," "disfigurement would be the natural and probable consequence of a violent blow in the face with such a weapon." 135 Va. at 577,

115 S.E. at 673.

We hold that Carnes's use of a "shiny object" in inflicting the injury to Reed, whether his ring or another object, should be viewed no differently. Code § 18.2-51 proscribes the infliction of bodily injury upon another "by _any_ means." (Emphasis added.) Thus, "[t]he statute, by its explicit terms, does not contain a limitation upon the means employed. Indeed, the focus of the established 'test of the offense of maliciously . . . causing bodily injury is the intent with which the result is accomplished rather than the nature of the means.'" Long v. Commonwealth, 8 Va. App. 194, 197, 379 S.E.2d 473, 475 (1989) (quoting Dawkins, 186 Va. at 63, 41 S.E.2d at 504) (noting that because the statute specifies "any means," the Commonwealth was not constrained to prove that the method used to cause bodily harm was inherently dangerous); see also Pannill v. Commonwealth, 185 Va. 244, 254, 38 S.E.2d 457, 462 (1946) (quoting 40 C.J.S. Homicide § 25) ("A deadly weapon is one which is likely to produce death or great bodily injury from the manner in which it is used, and whether a weapon is to be regarded as deadly often depends more on the manner in which it has been used than on its intrinsic character.").

We disagree, therefore, with Reed's contention that the evidence presented at trial was insufficient, as a matter of law, to establish the requisite intent to prove malicious wounding. The Commonwealth plainly established a basis upon which the trier of fact, here the trial court, could have reasonably inferred from Carnes's actions that he purposefully and cruelly intended to inflict bodily injury upon Reed.

- 9 -

Carnes's contention that he inflicted the blows upon Reed only in response to being pushed by Reed does not alter our analysis. In fact, "[t]he common law in this state has long recognized the right of a landowner to order a trespasser to leave, and if the trespasser refuses to go, to employ proper force to expel him, provided no breach of the peace is committed in the outset." Pike v. Commonwealth, 24 Va. App. 373, 375, 482 S.E.2d 839, 840 (1997). The evidence here, considered most favorably to the Commonwealth, demonstrated that Reed initially placed his hands on Carnes only in an effort to "escort" him from his property. As Carnes himself conceded, Reed told him to leave the property a number of times before doing so. This lawful act, therefore, does not provide the requisite provocation to dispel the malicious nature of Carnes's violent response. See Branch, 14 Va. App. at 841, 419 S.E.2d at 426. Moreover, the trial court was clearly permitted to reject Carnes's account of the incident. Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995) ("The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented.").

Accordingly, finding no error, we affirm the judgment of the trial court.

Affirmed.