COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judge McClanahan and Senior Judge Fitzpatrick
Argued at Richmond, Virginia


PARIS ANTWAN BARNES

                                     MEMORANDUM OPINION[*] BY
v.       Record No. 1514-05-2        CHIEF JUDGE WALTER S. FELTON, JR.
                                         NOVEMBER 21, 2006
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HALIFAX COUNTY
Leslie M. Osborn, Judge

Tracy L. Quackenbush for appellant.

Kathleen B. Martin, Senior Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Appellant Paris Antwan Barnes challenges his conviction and sentence for malicious

wounding in violation of Code § 18.2-51.  On appeal, he contends the trial court erred:  (1) in

finding that the evidence was sufficient to establish he maliciously acted with the requisite specific

intent to maim, disfigure, disable, or kill, and (2) in penalizing him during sentencing for not

expressing remorse.  For the reasons that follow, we affirm his conviction and sentence.

I.  BACKGROUND

When the sufficiency of the evidence to sustain a criminal conviction is challenged on

appeal, we "view the evidence in the light most favorable to the Commonwealth, the party

prevailing below, and grant all reasonable inferences fairly deducible therefrom."  Clifton v.

Commonwealth, 22 Va. App. 178, 180, 468 S.E.2d 155, 156 (1996) (citing Higginbotham v.

Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975)).  "The credibility of a witness, the

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

weight accorded the testimony and the inferences to be drawn from proven facts are matters to be determined by the fact finder." Clifford v. Commonwealth, 48 Va. App. 499, 513, 633 S.E.2d 178, 185 (2006) (citing Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989)). Thus, "[d]etermining the credibility of witnesses who give conflicting accounts is within the exclusive province of the [trier of fact], [who] has the unique opportunity to observe the demeanor of the witnesses as they testify." Lea v. Commonwealth, 16 Va. App. 300, 304, 429 S.E.2d 477, 479 (1993). Accordingly, we will only disturb the conclusions of the fact finder on issues of witness credibility if we "find[] that the testimony accepted by the [trial] court was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" Clifford, 48 Va. App. at 514, 633 S.E.2d at 185 (quoting Fisher v. Commonwealth, 228 Va. 296, 299-300, 321 S.E.2d 202, 204 (1984)).

So viewed, the evidence shows that during the evening of February 27, 2004, appellant, Howard Hamilton, and several other men were playing poker and drinking beer and liquor at Wayne Pannell's house. During the poker game, Hamilton became upset and grabbed about $75-$80 from the pool of money lying on the table. Appellant told him to put the money down, but Hamilton refused to do so, calling appellant a "m____ f____."

Appellant got up from the table, walked around to where Hamilton was standing, grabbed him, and pushed him to the floor facedown. He then proceeded to hit Hamilton's head against the floor "once or twice," and continued to push Hamilton's face into the floor, causing carpet burns on his face, until two other men pulled appellant off of him. Once he was pulled off of Hamilton, appellant returned to the table and resumed his participation in the poker game. Hamilton remained on the floor, facedown and bleeding from the nose. He was later helped to a nearby chair where he continued to bleed from the nose. One of the men retrieved several paper towels and wiped the

blood from Hamilton's face. Eventually, he was helped to a car by two of the other men at the gathering and driven home.

Hamilton died later that night.[1] As part of the investigation into Hamilton's death, Corporal C.L. Carswell of the South Boston Police Department inspected Pannell's living room at approximately 4:00 a.m. on February 28, 2004. He observed a wet, red stain on the carpet that had penetrated through the carpet to the sub-flooring. The location of the stain corresponded with the location where Hamilton remained after appellant's attack. Corporal Carswell also recovered several damp paper towels with red stains, which appeared to be blood, from the trash can in the kitchen. Subsequent luminal testing revealed blood splatter from the area where the stain in the carpet was located to the chair where Hamilton sat after being helped off the floor.

## II. ANALYSIS

### A. Sufficiency of the Evidence

Appellant first argues the Commonwealth's evidence was insufficient to sustain his conviction for malicious wounding, contending that it failed to prove he acted with malice and that he had the specific intent to maim, disfigure, disable, or kill Hamilton. We disagree.

"To support a conviction for malicious wounding under Code § 18.2-51, the Commonwealth must prove that the defendant inflicted the victim's injuries 'maliciously and with the intent to maim, disfigure, disable, or kill.'" Robertson v. Commonwealth, 31 Va. App. 814, 823, 525 S.E.2d 640, 645 (2000) (quoting Campbell v. Commonwealth, 12 Va. App. 476, 483, 405 S.E.2d 1, 4 (1991) (*en banc*)).

"'Malice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will.'" Luck v. Commonwealth, 32 Va. App. 827, 833, 531 S.E.2d 41,

---

[1] Neither the cause of death nor its connection to the events of the poker game are a part of the record before us.

44 (2000) (quoting Long, 8 Va. App. at 198, 379 S.E.2d at 475). "'It may be directly evidenced by words, or inferred from acts and conduct which necessarily result in injury.'" Hernandez v. Commonwealth, 15 Va. App. 626, 631, 426 S.E.2d 137, 140 (1993) (quoting Christian v. Commonwealth, 221 Va. 1078, 1081, 277 S.E.2d 205, 207 (1981)). "Volitional acts, purposefully or willfully committed, are consistent with a finding of malice and inconsistent with inadvertence." Luck, 32 Va. App. at 833, 531 S.E.2d at 44 (citing Porter v. Commonwealth, 17 Va. App. 58, 61, 435 S.E.2d 148, 149 (1993)).

Appellant contends the evidence proves, at most, that he acted in the heat of passion after Hamilton provoked him by calling him a "m ____ f____." "'Malice and heat of passion are mutually exclusive; malice excludes passion, and passion presupposes the absence of malice.'" Robertson, 31 Va. App. at 823, 525 S.E.2d at 645 (quoting Barrett v. Commonwealth, 231 Va. 102, 106, 341 S.E.2d 190, 192 (1986)). "In order to determine whether the accused acted in the heat of passion, it is necessary to consider the nature and degree of provocation as well as the manner in which it was resisted." Miller v. Commonwealth, 5 Va. App. 22, 25, 359 S.E.2d 841, 842 (1987).

The record reflects Hamilton called appellant a "m____ f____" during their argument about the poker game. However, it is well settled that "[w]ords alone, no matter how insulting, are never sufficient to constitute heat of passion." Rhodes v. Commonwealth, 41 Va. App. 195, 201, 583 S.E.2d 773, 776 (2003) (citing Canipe v. Commonwealth, 25 Va. App. 629, 642, 491 S.E.2d 747, 753 (1997)). Thus, appellant's heat of passion argument is without merit. Appellant's conduct in pushing Hamilton onto the floor, hitting Hamilton's head facedown on the floor, and then continuing to push his face into the floor for several minutes demonstrates that he "committed a purposeful and cruel act . . . without great provocation." Branch v. Commonwealth, 14 Va. App. 836, 841, 419 S.E.2d 422, 426 (1992). From our review of the record, we cannot say that the trial court's determination that appellant acted with malice was plainly wrong. See Code § 8.01-680.

- 4 -

Likewise, the trial court could have reasonably inferred from the evidence it received that appellant acted with the requisite specific intent to maim, disfigure, disable, or kill Hamilton. "'Intent is a state of mind which can be evidenced only by the words or conduct of the person who is claimed to have entertained it.'" Moody v. Commonwealth, 28 Va. App. 702, 706, 508 S.E.2d 354, 356 (1998) (quoting Banovitch v. Commonwealth, 196 Va. 210, 216, 83 S.E.2d 369, 373 (1954)). "A person's conduct may be measured by its natural and probable consequences, and the finder of fact may infer that a person intends the natural and probable consequences of his acts." Campbell, 12 Va. App. at 484, 405 S.E.2d at 4 (citing Kelly v. Commonwealth, 8 Va. App. 359, 373, 382 S.E.2d 270, 278 (1989)).

Relying on Lee v. Commonwealth, 135 Va. 572, 578, 115 S.E. 671, 673 (1923), appellant asserts that the specific intent required by Code § 18.2-51 "is one which aims at permanent disfigurement, not the temporary disfigurement which would naturally be expected from any assault." He contends that his conduct in hitting Hamilton's head on the floor does not "bespeak a specific intent to exact the more permanent damage envisioned in Lee."

In Campbell, we reaffirmed that Code § 18.2-51's intent requirement referred to permanent, rather than temporary, conditions. Campbell, 12 Va. App. at 484, 405 S.E.2d at 4 (citing Lee, 135 Va. at 578, 115 S.E. at 673). However, we also concluded that "if a person intentionally takes an action, the probable consequence of which is the permanent disability of another, even if permanent disability does not result, he or she can be found to have intended to cause a permanent disability." Id. at 484, 405 S.E.2d at 4-5.

Here, as we previously noted, appellant pushed Hamilton to the floor, hit his head against the floor "once or twice," and continued his attack by pushing Hamilton's face against the floor for several minutes until two other men were able to pull him off. The evidence reflects that Hamilton, who had consumed a large quantity of liquor, did not resist appellant's actions by fighting back.

Given the manner in which appellant attacked Hamilton, the length of the attack, and Hamilton's defenselessness, the trial court could reasonably conclude that the probable and natural consequence of appellant's conduct was the likely permanent disfigurement or disablement of Hamilton. See Roark v. Commonwealth, 182 Va. 244, 250, 28 S.E.2d 693, 696 (1944) ("'fists may not [] be regarded generally, as a deadly weapon; but they become most deadly, by blows . . . applied to vital and delicate parts of the body of a defen[s]eless, unresisting man, on the ground'" (quoting M'Whirt's Case, 44 Va. (3 Gratt.) 594, 611 (1846))).

From the record before us, we conclude there is sufficient credible evidence from which the trial court could have reasonably concluded that appellant acted with the intent to maim, disfigure, disable, or kill when he attacked Hamilton.

### B. Remorse as a Factor in Sentencing

Appellant next argues the trial court penalized him by imposing a greater sentence than it would normally impose, thereby violating his Fifth Amendment right to remain silent and his right to due process of law, because he failed to express remorse for his actions. He concedes "the trial court's sentence . . . was within the statutory range and the range contained in the sentencing guidelines," but, nevertheless, contends the trial court abused its discretion when it considered his "assertion of his Fifth Amendment rights as a negative factor in sentencing." We disagree.

A sentencing court "must take into account a wide range of information, including the defendant's remorse or lack thereof, in determining 'a sentence that best effectuates the criminal justice system's goals of deterrence (general and specific), incapacitation, retribution, and rehabilitation.'" Smith v. Commonwealth, 27 Va. App. 357, 363, 499 S.E.2d 11, 14 (1998) (quoting Gilliam v. Commonwealth, 21 Va. App. 519, 524, 465 S.E.2d 592, 594 (1996)). Accordingly, a "'trial court's present tense observation of a defendant's lack of remorse, so long as it is not *explicitly* linked to a defendant's prior claim of innocence or not guilty plea or exercise of

his right to remain silent,'" id. (quoting Saenz v. State, 620 A.2d 401, 407 (Md. Ct. Spec. App. 1993)) (emphasis added), does not violate the Fifth Amendment's Self-Incrimination Clause. See id. at 365, 499 S.E.2d at 14-15 (holding a trial court's consideration of remorse, or the lack thereof, does not compel a defendant to testify against himself in violation of the Fifth Amendment because denial of criminal responsibility is not inconsistent with an expression of sympathy for the victim).

During appellant's sentencing hearing, the trial court stated:

> [O]ne of the things that I think is very significant with regard to this [sentencing] . . . [is] there's nothing in the guidelines to take into the fact that we have no showing of remorse from this gentleman in any way, shape or form. And I think that that is important. That is one of the things that if somebody shows some remorse for what has happened, he's sorry that something has happened, that is something that the Court would take into consideration.

> \* \* \* \* \* \* \*

> [T]o be quite honest with you, I do take into consideration he has not indicated any remorse.

The trial court's comments do not support appellant's assertion that it considered his exercise of his Fifth Amendment right to remain silent as a negative factor in imposing his sentence. The trial court made no finding that appellant's silence both at trial and at his sentencing hearing demonstrated a lack of remorse. Instead, it noted that appellant had failed to "indicate[]" remorse in "any way, shape or form."

The evidence at trial proved that appellant grabbed Hamilton, pushed him onto the floor facedown, and hit his head against the floor. He continued to push Hamilton's head against the floor with sufficient force to cause rug burns until two men pulled him off of Hamilton, several minutes after he first initiated the attack. Moreover, the evidence showed that once the two men pulled appellant off of Hamilton, he casually resumed his participation in the poker game, leaving it up to other persons in the room to assist the injured Hamilton as they deemed appropriate. From

this evidence, the trial court could have reasonably concluded that appellant lacked remorse for his attack on Hamilton. Absent some explicit showing in the record that the trial court specifically considered appellant's silence as evidence of his lack of remorse, we cannot conclude that it impermissibly considered appellant's exercise of his Fifth Amendment right to remain silent when it imposed his sentence. Thus, appellant's Fifth Amendment argument is without merit.

Appellant also argues the trial court's consideration of his lack of remorse violated his due process rights under the Fifth and Fourteenth Amendments. However, appellant did not make this argument to the trial court. We "will not consider an argument on appeal which was not presented to the trial court." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998). See also Rule 5A:18.

As appellant conceded, the trial court did not impose a sentence that exceeded the maximum punishment prescribed by statute. Therefore, we will not overturn appellant's sentence as being an abuse of discretion. Valentine v. Commonwealth, 18 Va. App. 334, 339, 443 S.E.2d 445, 448 (1994) (citations omitted).

### III. CONCLUSION

For the foregoing reasons, we conclude the evidence was sufficient to sustain appellant's conviction for malicious wounding. We also conclude the trial court did not abuse its discretion, and therefore did not penalize appellant, when it considered appellant's lack of remorse as a factor in imposing his sentence. Thus, we affirm the judgment of the trial court.

Affirmed.