COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Alston and Senior Judge Haley
Argued at Richmond, Virginia

UNPUBLISHED

BARRY KEITH ASHWORTH

v.      Record No. 1993-15-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE RANDOLPH A. BEALES
NOVEMBER 8, 2016

FROM THE CIRCUIT COURT OF MECKLENBURG COUNTY
Leslie M. Osborn, Judge

Michael T. Trent (The Trent Law Practice, on brief), for appellant.

Rosemary V. Bourne, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

Following a bench trial on August 14, 2015, Barry Keith Ashworth ("appellant") was

convicted of unlawful wounding in violation of Code § 18.2-51.  On appeal, appellant challenges

the sufficiency of the evidence in support of that conviction.  Specifically, he alleges that "the

evidence failed to establish that the Appellant acted with the necessary intent to maim, disfigure,

disable, or kill."

I. BACKGROUND

We consider the evidence on appeal "in the light most favorable to the Commonwealth, as

we must since it was the prevailing party" in the trial court.  Beasley v. Commonwealth, 60

Va. App. 381, 391, 728 S.E.2d 499, 504 (2012) (quoting Riner v. Commonwealth, 268 Va. 296,

330, 601 S.E.2d 555, 574 (2004)).  So viewed, the evidence at trial was that appellant and Willie

Evans drove to Simply Wendy's Beauty Salon ("the beauty salon" or "the salon") in South Hill

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

in Mecklenburg County around 8:00 a.m. on the morning of March 26, 2015. Appellant had driven to the salon, which is owned by his wife, to drop off his wife's dog. According to his testimony, appellant noticed a burgundy truck parked behind the salon when he arrived. Appellant got out of his vehicle and entered the salon through a side entrance. Inside the salon, appellant found his wife and Larry Moseley sleeping on a futon.

Willie Evans testified that appellant asked him to watch the dog as appellant entered the beauty salon. After several minutes, Evans heard an argument from inside the salon and decided to get out of the vehicle. After exiting the vehicle, Evans saw appellant shove Moseley out of the door of the salon. As appellant ejected Moseley from the building, appellant stated, "Don't you know you're in here with my wife?" Evans testified that Moseley attempted to re-enter the salon, which caused appellant and Moseley to start fighting on the porch outside of the salon. While appellant and Moseley were fighting and both standing, appellant placed Moseley in a headlock. After Moseley was in the headlock, Evans noticed that Moseley's skin tone turned "quite dark" presumably due to a lack of oxygen. As physically demonstrated by Evans from the witness stand, appellant was choking Moseley with his left arm and punching Moseley repeatedly with his right hand. At some point, appellant "got a grip on [Moseley]" and "slammed him down to the floor" of the porch face first. After Moseley's face directly hit the porch, Evans saw that Moseley was bleeding and decided to call the police. While Evans did testify that Moseley was the aggressor, he also stated on the record that it was appellant who threw the first punch. Evans did not see the fight end because he was on the phone with emergency responders.

Moseley testified that he spent the evening of March 25, 2015 drinking alcohol with Wendy Link, the wife of appellant. After having driven to Henderson, North Carolina to purchase alcohol, Moseley and Link arrived at the salon at around 1:00 a.m. Moseley testified

that he fell asleep on a fold-out couch inside the salon around 3:00 a.m. At around 8:00 a.m., Moseley awakened when he realized that he was being physically attacked. Moseley testified that the first thing he remembered was that he was being hit and that blood was coming out of his nose. Moseley then tried to cover his face to protect himself. Moseley identified appellant as the attacker, having recognized his voice. Appellant repeatedly asked Moseley to apologize to him during the attack for sleeping with appellant's wife. Moseley testified that the attack lasted approximately five or ten minutes. Moseley's injuries from the attack included cuts on his head that caused bloodstains to form on the porch of the beauty salon, as well as other bruises and bumps. He also testified that he went "in and out of consciousness" during the attack and that he felt dizzy.

Appellant testified that, when he asked Moseley to leave the salon, Moseley attacked him "like a crazed man," swung at appellant, and struck him in the face. Next, the two individuals wrestled, went out of the door of the salon, and then fell to the ground. Appellant testified that he "threw a couple punches, but [he] was always on the defensive position, not the offensive position." [1]

Officer Richard Puryear responded to the call to the police sometime around 8:30 or 9:00 a.m. Puryear took photographs of Moseley's injuries. Puryear noticed that Moseley had some "marks, knots on his head" -- and that Moseley "looked real flush." Puryear testified that he did not remember seeing any visible bruises on appellant. Puryear also took photographs of the outside of the salon that showed drops of blood on the porch.

---

[1] The trial court determined that appellant's testimony had been "significantly impeached" and stated, "It's clear that Mr. Ashworth's version of this is not correct."

## II. ANALYSIS

### A. STANDARD OF REVIEW

When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004), "[w]e must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" Crowder, 41 Va. App. at 663, 588 S.E.2d at 387 (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*)). See also Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319. Any issues of statutory interpretation are reviewed *de novo*.

### B. SUFFICIENCY OF THE EVIDENCE

Appellant contends that the evidence was insufficient to prove that he acted with the intent to maim, disfigure, disable, or kill. Appellant was convicted of unlawful wounding in violation of Code § 18.2-51, which states:

> If any person maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, with the intent to maim, disfigure, disable, or kill, he shall, except where it is otherwise provided, be guilty of a Class 3 felony. If such act be done unlawfully but not maliciously, with the intent aforesaid, the offender shall be guilty of a Class 6 felony.

"[W]hether the required intent exists is generally a question of fact for the trier of fact." Nobles v. Commonwealth, 218 Va. 548, 551, 238 S.E.2d 808, 810 (1977). "Intent may be

- 4 -

shown by the circumstances, including a person's conduct and statements." Robertson v. Commonwealth, 31 Va. App. 814, 820, 525 S.E.2d 640, 643 (2000). Moreover, "[c]ircumstantial evidence is as acceptable to prove guilt as direct evidence, and in some cases, such as proof of intent or knowledge, it is practically the only method of proof." Abdo v. Commonwealth, 64 Va. App. 468, 475-76, 769 S.E.2d 677, 680 (2015) (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980)). Finally, "[t]he fact finder may infer that a person intends the immediate, direct, and necessary consequences of his voluntary acts." Robertson, 31 Va. App. at 820, 525 S.E.2d at 643.

"Under ordinary circumstances, an intent to maim may not be presumed from a blow with a bare fist." Fletcher v. Commonwealth, 209 Va. 636, 640, 166 S.E.2d 269, 273 (1969) (citing Lee v. Commonwealth, 135 Va. 572, 578, 115 S.E. 671, 673 (1923)). However, "an assault with a bare fist may be attended with such circumstances of violence and brutality" that the fact finder can reasonably conclude that the assailant acted with the necessary intent to maim, disfigure, disable, or kill. Id. at 640, 166 S.E.2d at 272; Dawkins v. Commonwealth, 186 Va. 55, 63, 41 S.E.2d 500, 504 (1947); Shackelford v. Commonwealth, 183 Va. 423, 426, 32 S.E.2d 682, 684 (1945); Roark v. Commonwealth, 182 Va. 244, 250, 28 S.E.2d 693, 695 (1944). An intent to maim, disfigure, disable, or kill a person can also be inferred from repeated blows applied to "vital and delicate parts of the body of a defenseless, unresisting person on the ground." Roark, 182 Va. at 250, 28 S.E.2d at 695 (quoting M'Whirt's Case, 44 Va. (3 Gratt.) 594, 611 (1846); see also Shackelford, 183 Va. at 427, 32 S.E.2d at 684.

Viewing the totality of the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party below, we hold that a rational trier of fact could find that appellant acted with the necessary intent to maim, disfigure, disable, or kill Moseley. The evidence at trial established that appellant walked into the salon and found Moseley lying on a

futon with appellant's wife. While appellant testified that he "really wasn't that upset" when he saw Moseley with his wife, the trial court rejected that testimony as not credible, stating, "I don't believe that for a minute. I just don't believe that." Thus, the trial court made a factual finding that appellant was angry when he confronted Moseley inside the salon.

In addition, Evans's testimony regarding appellant's conduct outside of the salon also demonstrated that appellant possessed the requisite intent. Evans testified that, during the fight on the porch, appellant placed Moseley in a headlock. While appellant held Moseley in the headlock, Evans observed that Moseley appeared to be short of breath. Evans also observed that Moseley's skin tone turned "quite dark" from a lack of oxygen. The trial court was particularly influenced by Evans's testimony regarding the discoloration of Moseley's face during the headlock. The trial court stated, "When you put somebody in a headlock and squeeze them so hard that they turn from white to black because of lack of oxygen, that's not an assault and battery." In short, appellant did much more than eject Moseley from his property and fight him in the process of doing so.

Finally, appellant's intent was evident in his repeated punches to Moseley's head and face while Moseley was essentially defenseless and being deprived of oxygen. Evans testified that it was appellant who threw the first punch. He testified that appellant punched Moseley "several times" while appellant was depriving Moseley of oxygen in the apparently suffocating headlock. When the Commonwealth asked Evans if Moseley was doing anything while he was being choked by appellant, Evans responded, "No, sir." Moseley testified that he felt dizzy during the attack and that he drifted "in and out of consciousness." From this evidence, the trial court properly rejected appellant's claim that he was simply trying to eject Moseley from the beauty salon and get Moseley away from appellant's wife. Instead, the trial court concluded that

appellant had choked Moseley to the point of unconsciousness and then repeatedly struck him in the face while Moseley was largely defenseless.

In summary, the evidence established that appellant repeatedly punched Moseley while he was either defenseless from the suffocating headlock or utterly helpless as he drifted in and out of consciousness during an attack that, according to Moseley, lasted between five and ten minutes.[2] The attack continued until appellant slammed Moseley face first into the porch. Interestingly, when it was apparent that Moseley was bleeding from his injuries and was largely defenseless, it was Evans – appellant's own friend and sometime employee – who called the police. For all of these reasons, we cannot say that no rational trier of fact could have found that appellant acted with the intent to maim, disfigure, disable, or kill Moseley, based on all of the circumstances that precipitated the attack and the fact that appellant placed Moseley in a suffocating headlock, severely reduced his supply of oxygen, and punched him repeatedly while Moseley was essentially defenseless. Therefore, we hold that the trial court did not err.

### III. CONCLUSION

For the foregoing reasons, we affirm appellant's conviction for unlawful wounding in violation of Code § 18.2-51.

Affirmed.

---

[2] While appellant testified that the altercation lasted approximately three minutes, we are required to view the evidence on appeal in the light most favorable to the Commonwealth. Beasley, 60 Va. App. at 391, 728 S.E.2d at 504.