UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Huff, Judges Chafin and Decker
Argued at Salem, Virginia

ALEXANDER MICHAEL EDWARDS

v.        Record No. 0939-16-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
CHIEF JUDGE GLEN A. HUFF
APRIL 11, 2017

FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
John T. Cook, Judge

Joshua Farmer (Farmer Legal, PLLC, on brief), for appellant.

Rosemary V. Bourne, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Alexander Michael Edwards ("appellant") appeals his convictions of two counts of

malicious wounding, in violation of Code § 18.2-51, and conspiracy to murder, in violation of

Code § 18.2-22.  Following a bench trial in the Circuit Court of Campbell County ("trial court"),

appellant was sentenced to twenty-one years in prison, with fifteen years suspended on these

charges.[1]  On appeal, appellant contends that the trial court erred in two respects:

> 1.  The trial court erred in denying [appellant's] motion to strike at
> the close of the Commonwealth's evidence and in ruling that the
> Commonwealth's evidence was sufficient, as a matter of law, to
> sustain convictions for malicious wounding in that the
> Commonwealth failed to present evidence that [appellant] acted
> with the requisite malicious intent to maim, disfigure, disable, or
> kill.
>
> 2.  The trial court erred in denying [appellant's] motion to strike at
> the close of the Commonwealth's evidence and in ruling that the
> Commonwealth's evidence was sufficient, as a matter of law, to

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant's other convictions are not at issue in this appeal.

sustain a conviction for conspiracy to commit a murder in that the Commonwealth failed to present evidence that two or more persons agreed to commit the crime.

For the following reasons, this Court affirms the trial court's ruling in part and reverses in part.

## I. BACKGROUND

On appeal, "we consider the evidence and all reasonable inferences flowing from that evidence in the light most favorable to the Commonwealth, the prevailing party at trial." Williams v. Commonwealth, 49 Va. App. 439, 442, 642 S.E.2d 295, 296 (2007) (*en banc*) (quoting Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004)). So viewed, the evidence is as follows.

From late November to December of 2013, appellant, who was twenty years old at the time, was living in the same house as two girls, K.M. (twelve years old), who suffers from a learning disability, and F.M. (eleven years old); their brother S.M. (thirteen years old); their mother; and mother's boyfriend, Daniel. During this time, Daniel, who worked as a tattoo artist, was operating his business out of their home and was keeping his tattoo gun in the house.

On December 22, 2013, while appellant was home alone with S.M., K.M., and F.M., appellant used Daniel's tattoo gun to tattoo F.M.'s and K.M.'s arms against their wishes. Appellant "yanked" the girls' arms and pulled them into the kitchen to administer the tattoos. Despite having no experience tattooing, appellant tattooed K.M.'s name on her left shoulder and then, without changing the needle, tattooed both of F.M.'s shoulders and one wrist with their dog's name, Reesee. The girls' arms hurt while appellant applied the tattoos, and F.M. stated that she cried throughout the incident. S.M. refused to get a tattoo from appellant and was upset about appellant tattooing his sisters. When mother and Daniel arrived home later that day, fighting ensued among appellant, mother, and Daniel, and ceased only after law enforcement intervened.

K.M. and F.M. later testified that even though they did not want the tattoos, they had not left the kitchen because they were afraid of appellant and felt helpless against him. When they tried to resist and told appellant they did not want tattoos, appellant stated that "if he didn't do it, then he would do something," which F.M. understood to mean that he would hurt them. F.M. had witnessed appellant fight S.M. and had seen appellant punch a wall and a door when he became angry. K.M. had witnessed appellant hit S.M. with a belt and hold him down in the grass outside their house. Appellant had also sexually assaulted K.M. on numerous occasions while he was living with them.

In January 2014, one of K.M.'s school resource officers contacted Investigator Stuart T. Herndon ("Herndon") of the Campbell County Sheriff's Office regarding the injury to K.M.'s left shoulder. Herndon, accompanied by a child protective services worker, reported to K.M.'s school and saw that K.M. had a tattoo with a burn mark over it on her left shoulder. The burn was the result of an attempt by Daniel to remove the tattoo with a "hot razor" with mother's consent. Daniel had also tried to remove F.M.'s tattoos using his tattoo gun and the "brush back" method. Appellant was later taken into custody.

While appellant was awaiting trial in jail, Herndon received a letter from another inmate, Robert T. Farrar ("Farrar"), who had been housed in the same area as appellant. The letter was written by appellant, addressed to Farrar, and stated the following:

> Dear Robbie, need these two people killed to keep them from testifying in my case . . . . I got $5,000.00 in payments for you to handle this. Without these two, the Commonwealth has no case on my sex charges. Alex Edwards.

In addition to the letter, appellant verbally asked Farrar to "let him know" if he could help appellant find someone to kill two potential witnesses for the prosecution. Farrar told appellant that he knew some people but later testified that he "never intended on—asking any of them." Appellant had previously admitted to Farrar that he had sexually abused K.M., and Farrar later

testified that this confession had repulsed him. Therefore, when he received the letter, Farrar gave the letter to authorities the next day because he knew "[he] couldn't sit there and keep that information to [himself]. [He] had to tell somebody."

After the close of the Commonwealth's evidence, appellant moved to strike the malicious wounding and conspiracy charges. As to the malicious wounding charges, defense counsel argued that appellant intended "to put art on . . . the children's body, . . . and there's certainly—there's no intent to put—to maim, disfigure, disable or kill." As to the conspiracy charge, appellant argued there was no evidence that Farrar agreed with appellant to commit any act in furtherance of murder. The trial court denied the motions to strike. Appellant did not present evidence, and the trial court found him guilty of the charges. This appeal followed.

## II. STANDARD OF REVIEW

The standard of appellate review of a denial of a motion to strike is well established in Virginia.

> When the sufficiency of [the Commonwealth's] evidence is challenged by a motion to strike, the trial court should resolve any reasonable doubt as to the sufficiency of the evidence in the [Commonwealth's] favor and should grant the motion only when it is conclusively apparent that [the Commonwealth] has proven no cause of action against defendant, or when it plainly appears that the trial court would be compelled to set aside any verdict found for the [Commonwealth] as being without evidence to support it.

Avent v. Commonwealth, 279 Va. 175, 198-99, 688 S.E.2d 244, 257 (2010) (alterations in original) (quoting Banks v. Mario Indus., 274 Va. 438, 454-55, 650 S.E.2d 687, 696 (2007)). "What the elements of the offense are is a question of law that we review *de novo*. Whether the evidence adduced is sufficient to prove each of those elements is a factual finding, which will not be set aside on appeal unless it is plainly wrong." Lawlor v. Commonwealth, 285 Va. 187, 223-24, 738 S.E.2d 847, 868 (2013). "[I]f there is evidence to support the conviction, the reviewing court is not permitted to substitute its judgment, even if its view of the evidence might

- 4 -

differ from the conclusions reached by the finder of fact at the trial." Commonwealth v. McNeal, 282 Va. 16, 20, 710 S.E.2d 733, 735 (2011) (quoting Commonwealth v. Taylor, 256 Va. 514, 518, 506 S.E.2d 312, 314 (1998)).

### III. ANALYSIS

On appeal, appellant contends that the trial court erred in denying his motions to strike the malicious wounding charges and the conspiracy charge. With regard to the malicious wounding, appellant concedes that he wounded K.M. and F.M. and acted with malice; nevertheless, he argues that the evidence was insufficient to prove that he *intended to disfigure* them by applying the tattoos. Concerning the conspiracy, appellant argues that there was insufficient evidence of an agreement.[2] This opinion addresses each assignment of error in turn.

### A. Malicious Wounding

Code § 18.2-51 provides that it is a felony to "maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, *with the intent* to maim, disfigure, disable, or kill." (Emphasis added). To support a conviction under this statute, the injury must have been "inflicted maliciously *and* with intent to maim, disfigure, disable or kill." Campbell v. Commonwealth, 12 Va. App. 476, 483, 405 S.E.2d 1, 4 (1991) (*en banc*) (emphasis added) (superseded on other grounds).

> When a statute makes an offense to consist of an act combined with a particular intent, that intent is just as necessary to be proved as the act itself, and must be found as a matter of fact before a conviction can be had; and no intent in law or mere legal presumption, differing from the intent in fact, can be allowed to supply the place of the latter.

---

[2] The Commonwealth concedes that the evidence was insufficient to support a conviction for conspiracy. While concessions of law are not binding on this Court, Wright v. Commonwealth, 278 Va. 754, 760 n.3, 685 S.E.2d 655, 658 n.3 (2009), concessions of fact may be binding, Logan v. Commonwealth, 47 Va. App. 168, 172, 622 S.E.2d 771, 773 (2005) (*en banc*).

Banovitch v. Commonwealth, 196 Va. 210, 215-16, 83 S.E.2d 369, 373 (1954) (quoting Thacker v. Commonwealth, 134 Va. 767, 770, 114 S.E. 504, 505 (1922)).

"A person's intent in performing an act is the purpose formed in the person's mind for the performance of the act." Campbell, 12 Va. App. at 483, 405 S.E.2d at 4. Unless admitted by the accused, intent must be proved by facts and circumstances "consistent with guilt" and "exclud[ing] every reasonable theory of innocence." Commonwealth v. Hudson, 265 Va. 505, 513, 578 S.E.2d 781, 785 (2003). "While no single piece of evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'" Stamper v. Commonwealth, 220 Va. 260, 273, 257 S.E.2d 808, 818 (1979) (quoting Karnes v. Commonwealth, 125 Va. 758 764, 99 S.E. 562, 564 (1919).

> [M]alice inheres in the intentional doing of a wrongful act without legal justification or excuse, or as the result of ill will. Malice *and* the specific intent to maim, etc., may be evidenced by words or inferred from acts and conduct under the rule that a person is presumed to have intended the natural and probable consequences of his voluntary act.

Fletcher v. Commonwealth, 209 Va. 636, 640, 166 S.E.2d 269, 272 (1969) (emphasis added).

As used in Code § 18.2-51, "[t]he word 'disfigure' means a 'permanent and not merely a temporary and inconsequential disfigurement.'" Id. at 484, 405 S.E.2d at 4 (quoting Lee v. Commonwealth, 135 Va. 572, 578, 115 S.E. 671, 673 (1923)). Disfigurement is further defined as "[a]n impairment or injury to the appearance of a person or thing." Disfigurement, Black's Law Dictionary (10th ed. 2014). Consequently, for the evidence to support a specific intent to disfigure, the evidence must be sufficient to find that the accused intended to "impair or injure" the appearance of the victim. Although "the nature and extent of the bodily injury and the means by which [such injury was] accomplished may reflect this intent," these factors are not exclusive;

"the critical issue is . . . the intent with which the injuries were inflicted." Campbell, 12 Va. App. at 483, 405 S.E.2d at 4.

In this case, the evidence was sufficient for a reasonable fact finder to conclude that appellant specifically intended to disfigure F.M. and K.M. when he tattooed their arms. In finding that appellant intended to "impair or injure" K.M.'s and F.M.'s appearances, the fact finder was able to consider the following: K.M. and F.M. were unequivocal in their resistance to having appellant tattoo their arms; appellant was inexperienced in administering tattoos and did not change the needle between tattooing each girl; the girls were hurt by the tattooing; and, despite F.M. crying, appellant forced her to receive three separate tattoos. Further, appellant does not dispute that the tattoos permanently disfigured F.M. and K.M. and it may be inferred that one "intend[s] the natural and probable consequences of his voluntary act." Fletcher, 209 Va. at 640, 166 S.E.2d at 272. Thus, the finding that appellant intended to disfigure K.M. and F.M. was not plainly wrong or without evidence in support. Accordingly, this Court affirms appellant's malicious wounding convictions.

## B. Conspiracy

Under Code § 18.2-22, it is unlawful for any person to "conspire, confederate or combine with another, either within or without this Commonwealth, to commit a felony within this Commonwealth." Code § 18.2-22(a). "In Virginia, the crime of conspiracy is complete when the parties agree to commit an offense." Gray v. Commonwealth, 260 Va. 675, 680, 537 S.E.2d 862, 865 (2000). "The agreement is the essence of the conspiracy offense." Fortune v. Commonwealth, 12 Va. App. 643, 647, 406 S.E.2d 47, 49 (1991) (quoting Zuniga v. Commonwealth, 7 Va. App. 523, 527-28, 375 S.E.2d 381, 384 (1988)).

> An agreement requires plurality of intent, a meeting of the minds. "It must be shown that the requisite intent existed as to at least two persons. That is, there must be a common design, so that if only

> one party to the agreement has the necessary mental state then
> even that person may not be convicted of conspiracy."

Id. (quoting W. LaFave & A. Scott, Criminal Law § 461, at 470 (1972)). "One who has no intention of following through with the common scheme but, instead, has the explicit intent to foil the ultimate conspiratorial success has not entered into an agreement." Id. at 648, 406 S.E.2d at 49.

In this case, this Court holds that the evidence was not sufficient as a matter of law to convict appellant of conspiracy to commit murder. Although appellant sought Farrar's assistance in murdering the two witnesses, there is no evidence that Farrar agreed to assist appellant. Instead, the evidence demonstrated that Farrar was repulsed by appellant's descriptions of his offenses against the girls and that Farrar handed the note to the authorities the next day in order to "foil the ultimate conspiratorial success." See Fortune, 12 Va. App. at 648, 406 S.E.2d at 49. While Farrar acknowledged that he knew of people who could assist appellant, he also testified that he did not intend to ask any of them and his actions that followed support that conclusion. No evidence refuted this testimony. Thus, there was no evidence of an agreement. Accordingly, this Court holds as a matter of law that the trial court erred to convict appellant of conspiracy to commit murder.

## IV. CONCLUSION

For the foregoing reasons, this Court affirms appellant's malicious wounding convictions but reverses appellant's conspiracy conviction and dismisses the indictment.

Affirmed in part; reversed and dismissed in part.