COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Elder and Beales
Argued at Chesapeake, Virginia


MICHAEL T. CLIFFORD
                                                              OPINION BY
v.        Record No. 1310-05-1                      JUDGE LARRY G. ELDER
                                                            AUGUST 8, 2006
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                            Mark S. Davis, Judge

              Esther J. Windmueller for appellant.

              Michael T. Judge, Senior Assistant Attorney General (Robert F.
              McDonnell, Attorney General, on brief), for appellee.


        Michael T. Clifford (appellant) appeals from his jury trial convictions for four counts of

aggravated sexual battery against four sisters.  On appeal, he contends the trial court erroneously

ruled he could not question one of the complainants about prior accusations of sexual abuse she

made against a third party.  He also contends the evidence was insufficient to support his

convictions because the evidence as to the time of the alleged offenses was deficient, the

testimony of the Commonwealth's witnesses was inherently incredible, and the evidence failed

to prove he acted with the requisite intent.  We hold the court's refusal to allow appellant to

cross-examine one of the complainants about prior sexual abuse was error but was harmless

because the court permitted appellant to cross-examine the complainant's mother on the subject.

Further, we hold that appellant failed to preserve for appeal his argument that the evidence was

insufficient to prove he acted with the requisite intent.  Finally, we hold that the testimony of the

Commonwealth's witnesses was not inherently incredible and that, because time was not of the

essence in regard to the charged offenses, the Commonwealth's proof regarding when the abuse occurred was sufficient to support appellant's convictions. Thus, we affirm the convictions.

## I.

## BACKGROUND

In January 2005, appellant was indicted for sexually abusing four sisters--A., H., J., and C.--"[o]n or about[] April 1, 2004[,] through May 31, 2004," when all of the sisters were under thirteen years of age.[1] Appellant and his wife were friends of the girls' parents, Mr. and Mrs. H., whom they had met through their church, and appellant and his wife served as surrogate grandparents to Mr. and Mrs. H.'s ten minor children, including the four sisters he was indicted for sexually abusing. At the time of the alleged abuse, A. was 11 and 12 years old, H. was 10, J. was 9, and C. was 6 and 7. In a jury trial, appellant was convicted of aggravated sexual battery against A., H., J., and C. After sentencing, he noted this appeal.

## II.

## ANALYSIS

## A.

## RAPE SHIELD STATUTE AND SCOPE OF CROSS-EXAMINATION

At trial, appellant sought leave to cross-examine Mrs. H. and J. about the alleged 1998 sexual abuse of J. for which a third party, D.W., was tried in February 2004, resulting in a hung jury, and again in September 2004, resulting in an acquittal. Based on Mrs. H.'s testimony as to why she did not report appellant's alleged abuse or stop appellant from coming over any earlier than she did, appellant argued the pending charges against D.W., coupled with the H. family's related involvement with the Commonwealth's Attorney's Office and Department of Social

---

[1] Appellant was indicted for sexually abusing two additional sisters, but the Commonwealth did not proceed to trial on two counts of the indictment involving two of the younger sisters and disposed of the charges by *nolle prosequi*.

Services during that period of time, were relevant to impeach Mrs. H.'s and J.'s credibility.[2] The Commonwealth agreed that the evidence was relevant to credibility but argued that the subject matter of J.'s alleged prior sexual abuse by D.W. fell squarely within the protections of Code § 18.2-67.7, Virginia's rape shield statute, and did not fall under any of the statute's exceptions. The trial court ruled that appellant could cross-examine the mother about the prior allegations but could not cross-examine the daughter "because it is much more closely related to the issue of prior sexual conduct of the child."

The rape shield statute provides in relevant part as follows:

> In prosecutions under this article, general reputation or opinion evidence of the complaining witness's unchaste character or prior sexual conduct shall not be admitted. Unless the complaining witness voluntarily agrees otherwise, evidence of specific instances of his or her prior sexual conduct shall be admitted only if it is relevant and [falls within one of three categories specified in the statute, none of which are alleged to apply in appellant's case].

Code § 18.2-67.7(A). "[*P*]*rior sexual conduct*" is defined as "any sexual conduct on the part of the complaining witness which took place before the conclusion of the trial, excluding the conduct involved in the offense alleged under this article." Code § 18.2-67.10(5).

By enacting the rape shield statute, "'[t]he General Assembly intended to preclude evidence of general reputation or opinion of the unchaste character of the complaining witness in all circumstances.'" Cairns v. Commonwealth, 40 Va. App. 271, 283, 579 S.E.2d 340, 345 (2003) (quoting Winfield v. Commonwealth, 225 Va. 211, 220, 301 S.E.2d 15, 20 (1983)). It also intended to preclude admission of evidence of specific prior sexual conduct except in those instances enumerated in the statute. Id.; see id. (quoting Neely v. Commonwealth, 17 Va. App.

---

[2] Prior to trial, appellant had filed a written motion indicating he intended to introduce evidence of this accusation at trial. In a pretrial motion hearing, appellant argued the evidence he sought to introduce did not fall within the prohibition of Virginia's rape shield statute and that he had filed the motion out of an abundance of caution. The judge hearing the motion reserved ruling until the time of trial.

349, 358, 437 S.E.2d 721, 726 (1993), for proposition that "'the trial judge must admit other relevant, material evidence not within the enumerated exceptions, when the exclusion of such evidence would deny the defendant the constitutional right to a fair opportunity to present evidence probative of his defense of the charges against him'"). However, "where relevant evidence is not of prior sexual 'conduct,' Code § 18.2-67.7 does not apply." Brown v. Commonwealth, 29 Va. App. 199, 215, 510 S.E.2d 751, 759 (1999).

Virginia's appellate courts have on several occasions considered what qualifies as "prior sexual conduct" within the meaning of Code § 18.2-67.7. In Clinebell v. Commonwealth, 235 Va. 319, 320-21, 368 S.E.2d 263, 263 (1988), the defendant was convicted, *inter alia*, of raping and sodomizing his daughter and, on appeal, he argued the trial court improperly applied the rape shield statute to exclude evidence of certain prior statements made by his daughter. Those statements included references to a classmate that she was pregnant, that her father and uncle had raped her, that her grandfather had molested her, and that another boy had impregnated her. Id. at 321-22, 368 S.E.2d at 264. The defendant argued that by introducing his daughter's statements, he was not attempting to prove that she "has engaged in 'prior sexual conduct' or that she has an unchaste character." Id. at 322, 368 S.E.2d at 264. The Supreme Court characterized the defendant's efforts as "seek[ing] to prove for impeachment purposes that his daughter makes false statements concerning sexual behavior," and it "conclude[d] that such statements are not [sexual] 'conduct' within the meaning of Code § 18.2-67.7." Id.

We considered the meaning of the term "prior sexual conduct" as used in the rape shield statute in Brown, 29 Va. App. at 212-16, 510 S.E.2d at 757-59. There, the trial court prevented the defendant from cross-examining the complaining witness about testimony she had given in a prior rape prosecution of a different defendant. Id. at 212, 510 S.E.2d at 757. We noted

> [The testimony of] Jane Doe[, the complaining witness] in this
> case[,] bore many striking similarities to her earlier testimony in

> Glymph[, the prior prosecution in which she had testified]. In both cases, Doe claimed that she did not know her attacker prior to the day of each incident. In both cases, Doe drove each man around in her own automobile and admittedly spent time talking with each. She also testified that she voluntarily consumed alcoholic beverages and socialized with each man prior to the alleged attacks. In each case, Doe stated that she requested and was permitted to go to the bathroom after each man had started to molest her. Such substantial similarities may suggest fabrication.

Id. at 215-16, 510 S.E.2d at 759. We reversed the trial court's exclusion of this evidence, holding that Brown "did not seek to introduce evidence of any sexual acts in which [the complaining witness] was involved." Id. at 216, 510 S.E.2d at 759. We explained further that

> Brown's counsel sought to question Doe about prior testimony, not her prior conduct. Furthermore, the testimony sought was not about sexual conduct. Brown's counsel asked Doe questions relating to what allegedly occurred between Brown and Doe *prior* to any possible sexual conduct. After Doe responded to these questions, Brown's counsel attempted to ask Doe if what she described constituted "a striking[ly] similar story to the story you told in a rape case in 1989--." The Commonwealth objected to this question, citing the "rape shield" law. The court sustained the objection. The similarities between Doe's prior testimony and her testimony in this case could have affected her credibility and evidenced possible fabrication of her testimony in this case.

Id. (emphasis added). We concluded that "[e]vidence of prior testimony in an unrelated rape prosecution, when offered to show its substantial similarity for the purpose of testing the credibility of the witness," is not "prior sexual conduct" under Code § 18.2-67.7. Id.

In Brown, we also cited the decision in State v. Lampley, 859 S.W.2d 909 (Mo. Ct. App. 1993), in which the reviewing court reversed the trial court's exclusion, under a similar rape shield statute, of evidence showing the complaining witness' prior complaint of abuse against a third party. Brown, 29 Va. App. at 214-15, 510 S.E.2d at 758-59 (citing Lampley, 859 S.W.2d at 910-12).

> In Lampley, the defendant argued that the stepdaughter's previous complaint of sexual abuse was relevant to show ". . . how she benefited [sic] from the prior complaint." [859 S.W.2d] at 910.

- 5 -

The evidence showed that the prior abuse complaint resulted in removal of the subject of the complaint from the stepdaughter's house. See id. at 911. The defendant argued that the stepdaughter did not like him and "accusing him of sexual molestation was a way of getting him out of her home." Id. Therefore, the defendant argued that he should have been allowed to question his stepdaughter about the prior complaint to determine if she had any possible motive to fabricate the complaint against him. See id.

The Missouri Court of Appeals reversed his convictions, holding that the defendant "never indicated an intention to go into prior sexual conduct . . . [and it was] not the stated subject of cross-examination." Id. The court held that a limited inquiry about the prior complaint would have been permissible if it was confined to "show motive to fabricate and never implicate [the statute]." Id. at 912. Therefore, "the trial court view that reference to the prior incident is 'totally irrelevant' is patently wrong." Id. at 912.

Id.

Most recently, in Cairns, 40 Va. App. at 284-86, 570 S.E.2d at 346-47, we held a

complaining witness' journals, in which she "catalogu[ed] numerous . . . sexual encounters" but

"[did] not mention [the defendant's alleged] sexual contacts with her," were not "conduct"

within the meaning of the rape shield statute and, although not admissible as substantive

evidence, were admissible to impeach her "statements to the police that she kept a detailed

[written] account of [the defendant's] abuse."

These cases make clear that the term "prior sexual conduct" as used in the rape shield

statute is to be construed narrowly. As we observed in Cairns,

"'[C]alling for evidence in one's favor is central to the proper functioning of the criminal justice system. It is designed to ensure that the defendant in a criminal case will not be unduly shackled in his effort to develop his best defense.'" Clark v. Commonwealth, 31 Va. App. 96, 109, 521 S.E.2d 313, 319 (1999) (quoting Massey v. Commonwealth, 230 Va. 436, 442, 337 S.E.2d 754, 757 (1985)). Therefore, "no legislation, however salutary its purpose, can be so construed as to deprive a criminal defendant of his Sixth Amendment right to confront and cross-examine his accuser and to

> call witnesses in his defense." Winfield, 225 Va. at 218, 301
> S.E.2d at 19.

Id. at 284-85, 579 S.E.2d at 346 (citations omitted).

Applying these principles in appellant's case, we hold that the subject matter on which appellant sought to cross-examine J. was not "prior sexual conduct" within the meaning of the rape shield statute. Appellant sought to refer to J.'s prior claim of sexual abuse against a third party only for the purpose of showing that J. had contact with the Commonwealth's Attorney's Office, Department of Social Services, and the Police Department regarding the earlier complaint during the time it was alleged that appellant was abusing her and her sisters in 2004. Appellant sought to impeach J. based on a claimed delay in reporting her complaints against appellant despite the fact that she had made such a report about a third party in the past and that she had ongoing contact with the authorities in regard to that prior report during the same period of time she alleged appellant had abused her.[3] Thus, the trial court's ruling that appellant could not cross-examine J. about these matters was error.

---

[3] The truth or falsity of J.'s prior claim of abuse was not relevant under the facts of this case. Although the trial court raised the issue of the truth or falsity of J.'s claim on admissibility, appellant never argued below that the falsity of J.'s prior claim provided a basis for permitting him to raise it on cross-examination and, in fact, expressly disavowed any need to raise the issue of truth or falsity of the prior claim.

Clinebell holds that a defendant "seek[ing] to prove for impeachment purposes that [the complaining witness] makes *false* statements concerning sexual behavior" must first establish a reasonable probability of falsity of prior statements concerning sexual behavior before cross-examination concerning that sexual behavior is permissible. 235 Va. at 325, 368 S.E.2d at 266 (emphasis added). Clinebell does not hold that probable falsity must be established before a prior claim of sexual abuse is admissible for any type of impeachment. See Brown, 29 Va. App. at 216, 510 S.E.2d at 759 (not discussing issue of probable falsity before permitting admission of "[e]vidence of prior testimony in an unrelated rape prosecution, when offered to show its substantial similarity for the purpose of testing the credibility of the witness"); see also Lampley, 859 S.W.2d at 910-12 (holding evidence that complainant's making of "prior abuse complaint resulted in removal of subject of the complaint from [complainant's] house" was relevant and admissible to support defendant stepfather's claim that complainant did not like him and had motive to fabricate present complaint of abuse by him in order to "get[] him out of her home"). Because appellant, unlike the defendant in Clinebell, did not "seek to prove for impeachment

B.

HARMLESS ERROR

Because "[c]ross-examination is an absolute right guaranteed to a defendant by the confrontation clause of the Sixth Amendment and is fundamental to the truth-finding process," Clinebell, 235 Va. at 325, 368 S.E.2d at 266 (internal citations omitted), any error in improperly restricting cross-examination is an error of constitutional magnitude. See Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S. Ct. 1431, 1438, 89 L. Ed. 2d 674, 686 (1986). "'[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt;' otherwise the conviction under review must be set aside." Lilly v. Commonwealth, 258 Va. 548, 551, 523 S.E.2d 208, 209 (1999) (quoting Chapman v. California, 386 U.S. 18, 24, 87 S. Ct. 824, 828, 17 L. Ed. 2d 705, 710-11 (1967)). In determining whether an error is harmless, we review "the record and the evidence and evaluate the effect the error may have had on how the finder of fact resolved the contested issues." Lavinder v. Commonwealth, 12 Va. App. 1003, 1007, 407 S.E.2d 910, 912 (1991) (en banc). "An error does not affect the verdict if we can determine, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same." Cairns, 40 Va. App. at 286, 579 S.E.2d at 347.

> "Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case."

---

purposes that [the complaining witness] makes *false* statements concerning sexual behavior," the truth or falsity of J.'s prior complaint was not relevant in this case.

- 8 -

<u>Dearing v. Commonwealth</u>, 260 Va. 671, 673, 536 S.E.2d 903, 904 (2000) (quoting <u>Van Arsdall</u>, 475 U.S. at 684, 106 S. Ct. at 1438, 89 L. Ed. 2d at 686-87).

Applying these principles to appellant's convictions, we hold the trial court's erroneous refusal to allow appellant to cross-examine ten-year-old J. about her prior claim of sexual abuse against a third party and her related contact with the Commonwealth's Attorney's Office, the Department of Social Services, and the Police Department regarding that complaint was harmless. Appellant argued that "[t]he point of the inquiry both to the mother and to the child is" the same--that the unrelated charge of sexual abuse was pending in the court and that, although the mother and daughter had access to and contact with these various agencies over the unrelated matter in April and May of 2004, they claimed not to know how to go about reporting appellant's alleged abuse.

The court in fact allowed appellant to cross-examine Mrs. H. on this issue without reference to which of her daughters was involved. Mrs. H. confirmed that "there was another investigation that [she] was involved with which involved the sexual abuse of one of her other children[, other than A.,] that was pending at the same time." She stated that when the allegations of appellant's abuse of her daughters surfaced in April 2004, "[i]t was already over with for Social Services at that time" with regard to the unrelated complaint of sexual abuse. Mrs. H. agreed, however, when asked, "[Y]ou had access and you were working with" the Commonwealth's Attorney's Office and a detective in regard to "that other case when your daughters came to you in mid to late April of 2004 [with complaints about appellant], correct?" Mrs. H. conceded that despite this ongoing contact with law enforcement officials, they did not report appellant's alleged abuse of the girls until June 2004. On redirect, Mrs. H. testified that she should have reported the allegations of appellant's abuse to law enforcement authorities

sooner, but she indicated she instead sought help from the church both families attended and that she had hoped appellant would repent and "talk it out with the pastor."

Thus, appellant had the opportunity to fully explore the delayed reporting issue with Mrs. H. and to argue to the jury that said delay negatively impacted the credibility of Mrs. H. and the child alleged to have been abused previously. Cross-examination of J. on this point would have been merely cumulative. After J. testified on direct, appellant was allowed unfettered cross-examination of J. on all other issues, including her testimony that she reported the abuse by appellant to no one immediately after it happened but eventually told her sisters and her mother. We thus conclude that any impact of the requested cross-examination on J.'s credibility would have been minimal and that the court's error in prohibiting cross-examination of J. on the subject of the unrelated abuse complaint and the access it gave her to law enforcement personnel was harmless beyond a reasonable doubt.

## C.

### SUFFICIENCY OF THE EVIDENCE

When considering the sufficiency of the evidence on appeal in a criminal case, we view the evidence in the light most favorable to the Commonwealth, granting to the evidence all reasonable inferences fairly deducible therefrom. Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). The credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters to be determined by the fact finder. Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989).

"Determining the credibility of witnesses who give conflicting accounts is within the exclusive province of the [trier of fact], [who] has the unique opportunity to observe the demeanor of the witnesses as they testify." Lea v. Commonwealth, 16 Va. App. 300, 304, 429 S.E.2d 477, 479 (1993). "No litigant is bound by contradicted testimony of a witness even

though proffered by the litigant." Williams v. Commonwealth, 235 Va. 168, 176, 360 S.E.2d 361, 366 (1987). "'[W]hen two or more witnesses introduced by a party litigant vary in their statements of fact, such party has the right to ask the court or jury to accept as true the statements most favorable to him.'" Ravenwood Towers, Inc. v. Woodyard, 244 Va. 51, 55, 419 S.E.2d 627, 629 (1992) (quoting Massie v. Firmstone, 134 Va. 450, 462, 114 S.E. 652, 656 (1922)). The conclusions of the fact finder on issues of witness credibility may be disturbed on appeal only if this Court finds that the testimony accepted by the court was "inherently incredible, or so contrary to human experience as to render it unworthy of belief." Fisher v. Commonwealth, 228 Va. 296, 299-300, 321 S.E.2d 202, 204 (1984).

## 1.  Intent

Appellant contends on appeal that the evidence was insufficient to prove he acted with the requisite "intent to sexually molest, arouse, or gratify any person." Code §§ 18.2-67.3(1), -67.10(6). This claim of error is barred by Rule 5A:18, which provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." "In order to be considered on appeal, an objection must be timely made and the grounds stated with specificity." Marlowe v. Commonwealth, 2 Va. App. 619, 621, 347 S.E.2d 167, 168 (1986). Here, appellant did not argue to the trial court that the evidence was insufficient to prove the requisite intent. He argued only that the testimony of the complaining witnesses, particularly A., was inherently incredible and that the sisters' testimony about when the alleged abuse occurred was insufficient to prove it occurred during the time frames alleged in the indictment.

In addition, the alleged error does not meet the standards for review under the good cause or ends of justice exceptions to Rule 5A:18, for it is not "clear, substantial and material." Brown

v. Commonwealth, 8 Va. App. 126, 132, 380 S.E.2d 8, 11 (1989); see Campbell v. Commonwealth, 12 Va. App. 476, 484, 405 S.E.2d 1, 4 (1991) (en banc) (noting that intent can be proved by circumstantial evidence such as one's actions or statements and that fact finder may presume offender intends natural and probable consequences of his acts). The evidence of the way in which appellant touched the girls, viewed in the light most favorable to the Commonwealth, permitted the inference that appellant acted with the requisite intent.

### 2. Credibility of Witnesses

Appellant also claims the testimony of the complainants was inherently incredible because "they contradicted themselves and each other about the times of the alleged assaults, their locations, and whether witnesses were present." He also claims the testimony of Mrs. H. was inherently incredible because she claimed to have known of the allegations of abuse for over six weeks before she barred appellant from her home and that additional facts belied her claim that she did not know where to turn because the evidence established she had extensive experience with the authorities over another claim of sexual abuse against one of her children and because she, herself, had been abused as a child. We hold appellant's contentions do not render the children's and mother's testimony so incredible as to make it unworthy of belief as a matter of law. Appellant had the opportunity to cross-examine the sisters about any inconsistencies in their testimony concerning what happened and when. He also had the opportunity to argue these inconsistencies to the jury. The jury concluded, however, as it was entitled to do, that the inconsistencies were not so great as to make the sisters' testimony unworthy of belief. We agree with this conclusion.

Appellant also had a full opportunity to cross-examine Mrs. H. about her claim that she did not report the allegations about appellant sooner because she was not sure how to go about it. Mrs. H. explained that, although she was still in contact with the Commonwealth's Attorney's

Office over a prior claim of sexual abuse against a third party, she did not immediately contact them for several reasons. She testified she hoped her daughters' claims about appellant's touching them stemmed from an accident or misunderstanding rather than intentional conduct, that she felt powerless to act because of her own history of abuse, and that even when she herself saw appellant touching her daughters inappropriately, she hoped appellant could obtain help from the pastor of their church and that she would not have to involve the authorities. This testimony is not so inherently incredible that no jury could have believed it, which, as we have noted, is the proper standard for review on appeal. See, e.g., Fisher, 228 Va. at 299-300, 321 S.E.2d at 204.

### 3. Allegations and Proof Concerning When Abuse Occurred

Finally, appellant contends the evidence was deficient as to the time of the abuse. The indictments alleged the charged events occurred "[o]n or about[] April 1, 2004[,] through May 31, 2004." Appellant argues on brief that it was "crucial" for him "to know the dates of the charges against him so that he could properly prepare his defense," but he fails to allege how he was handicapped in his preparation.

Code § 19.2-220 provides in pertinent part that every indictment "shall [contain] a plain, concise and definite written statement . . . reciting that the accused committed the offense on or about a certain date." Code § 19.2-226 further provides that "[n]o indictment or other accusation shall be quashed or deemed invalid . . . [f]or omitting to state, or stating imperfectly, the time at which the offense was committed when time is not the essence of the offense . . . ." In sexual offenses, where "there is no dispute that the crime, assuming it occurred, involved a minor child" or a child beneath the age specified by the applicable statute, "[t]he allegation of time . . . is not of such constitutional import because time was not of the essence of the offense charged." Clinebell v. Commonwealth, 3 Va. App. 362, 367, 349 S.E.2d 676, 679 (1986), aff'd in part and

rev'd in part on other grounds, 235 Va. 319, 368 S.E.2d 263 (1988); see also Waitt v. Commonwealth, 207 Va. 230, 235, 148 S.E.2d 805, 808 (1966) (holding time not of the essence in statutory rape case where age of victim not in dispute).

Here, with only a few exceptions, the girls testified that the specific incidents of abuse they described took place in the H. family home in front of other members of the H. family. It was undisputed that up until June 2004, appellant was in the H. family home with great frequency and interacted extensively with all the H. children in his role as a surrogate grandparent. Further, appellant admitted touching the H. children, including the girls, on numerous occasions, rubbing their "tummies" and "backs," although he denied touching the girls' breasts, vaginas or buttocks. Thus, he did not claim any sort of alibi defense as to the allegations. Neither the record nor appellant's brief gives any indication as to how more specific information regarding the time the abuse was alleged to have occurred would have helped appellant in the preparation of his defense. Cf. Clinebell, 3 Va. App. at 367, 349 S.E.2d at 679 (observing that "in most parent-child sexual abuse cases, . . . [i]t is rare indeed that a custodial parent could prove, using an alibi-based defense, that there was never an opportunity for the parent to commit such a crime"). Thus, we conclude the trial court did not abuse its discretion in ruling the dates contained in the indictment were sufficiently narrow to apprise appellant of the charges against him and to allow him to prepare a defense.

Appellant also alleges that with respect to "at least one count" of the indictment, "the time period is completely outside the evidence the Commonwealth presented." We presume he refers to the evidence involving the abuse of daughter H., about which he argued to the trial court in his motion to set aside the verdict. Because time was not of the essence with respect to any of the charged incidents, we hold that proof that appellant's abuse of daughter H. may have occurred in mid to late March 2004 was sufficient to satisfy the allegation in Count 3 of the

- 14 -

indictment that appellant's abuse of daughter H. occurred "on or about" April 1, 2004, to May 31, 2004.

We reached a similar conclusion in Marlowe v. Commonwealth, 2 Va. App. 619, 347 S.E.2d 167 (1986), in which the indictment charged that an incident of aggravated sexual battery occurred "on or about February 17, 1984." Id. at 621, 347 S.E.2d at 169. After the defendant presented an alibi defense for that date, the jury inquired whether "the offense [had] to have occurred on the 17th or [whether it] could . . . have occurred on or about the 17th?" Id. at 621-22, 347 S.E.2d at 169. The trial court responded that "[a] conviction could be found if the jury finds beyond a reasonable doubt that the offense set forth in the indictment . . . occurred as alleged on or about the 17th day of February, 1984." Id. at 622, 347 S.E.2d at 169. We affirmed, holding that

> [w]hen time is not an element of the crime charged, the jury verdict will stand if the evidence is sufficient to prove beyond a reasonable doubt that a crime occurred and that the defendant committed the crime, even though the evidence is such that there may be a reasonable doubt as to the day on which the offense occurred. Such a result does not constitute a denial of due process of law.

Id. at 623-24, 347 S.E.2d at 169. Noting that "the complaining witnesses were two young children, ages nine and ten," we continued:

> To require that a child or any witness be able to recall the exact date an event occurred in his or her life in order to obtain a conviction would too often preclude prosecutions in this type of case where the victims are children and the crimes are not discovered until some time after their commission. The Commonwealth's case would too often fail because it could not specify the exact date of the offense against the child. It is this same reasoning which permits the Commonwealth to prove the commission of the crime charged on a date different than that alleged in the indictment.

Id. at 625-26, 347 S.E.2d at 171.

The evidence here, viewed in the light most favorable to the Commonwealth, supported a finding that appellant committed aggravated sexual battery of daughter H. on numerous occasions, both prior to and during the time frame alleged in the indictment. Daughter H. testified about one particular incident of abuse that she said occurred before her family took appellant and his wife to the airport. Mrs. H. testified that the airport trip occurred at "the end of March," 2004. Thus, this evidence supported a finding that the particular incident of abuse about which daughter H. testified occurred before but perhaps close to the time frame alleged in the indictment--"on or *about*" April 1, 2004, through May 31, 2004. (Emphasis added).

In addition, daughter H. testified that numerous other incidents of abuse occurred during which appellant touched her in the same way and that she would "sometimes wear tight underwears [sic] and wear belts that would be so tight on [her that] it would be hard for [appellant] to open." Daughter H. testified that these other incidents occurred "[s]ometimes in [her] bedroom, sometimes in the den, sometimes in the living room and sometimes outside." Daughter H.'s sister, A., testified that she observed one of these incidents in the family's den while they were watching a movie. A. saw appellant put his hand "up [daughter H.'s] shirt, through her bra, and . . . touch her breasts, and with his other hand he . . . went down through her jeans, under her underwear and he touched her vagina and her butt."

A. testified that appellant also touched her, A., in the same way that day and that these incidents occurred before the Tattoo, a musical performance that the H. family attended with appellant and his wife, and at a time when her oldest brother, Jason, was home from the military. Other evidence established that Jason was not yet home when appellant and his wife left for the Dominican Republic in March 2004 but that Jason came home shortly thereafter and that he remained home until after the family attended the Tattoo, which occurred on April 21 or 22. Thus, based on A.'s testimony that the events occurred before the Tattoo and at a time when

Jason and appellant were both present, they had to have occurred between April 3, the date on which appellant and his wife returned from the Dominican Republic, and April 21 or 22, the date of the Tattoo. This evidence also was sufficient to support the jury's finding that appellant committed aggravated sexual battery against daughter H. "[o]n or about[] April 1, 2004[,] through May 31, 2004."

III.

For these reasons, we hold the court's refusal to allow appellant to cross-examine one of the complainants about prior sexual abuse was error but was harmless because the court permitted appellant to cross-examine the complainant's mother on the subject. Further, we hold that appellant failed to preserve for appeal his argument that the evidence was insufficient to prove he acted with the requisite intent. Finally, we hold that the testimony of the Commonwealth's witnesses was not inherently incredible and that, because time was not of the essence in regard to the charged offenses, the Commonwealth's proof regarding when the abuse occurred was sufficient to support appellant's convictions. Thus, we affirm.

Affirmed.