COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Chief Judge Decker, Judges Beales and Raphael


JONATHAN CORNELIUS MCNEAL

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1129-22-1              CHIEF JUDGE MARLA GRAFF DECKER
                                                    DECEMBER 19, 2023
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF NORTHAMPTON COUNTY
                               Glen A. Tyler, Judge

            (Charles E. Haden, on brief), for appellant.

            (Jason S. Miyares, Attorney General; Aaron J. Campbell, Assistant
            Attorney General, on brief), for appellee.


        Jonathan Cornelius McNeal appeals his convictions for two counts of sodomy and one count

of object sexual penetration of a child under the age of thirteen, indecent liberties by a parent with a

child under the age of fifteen, and sodomy of a child at least thirteen years of age but less than

eighteen by a family member, in violation of Code §§ 18.2-67.1, -67.2, -361, and -370.  The

appellant challenges the sufficiency of the evidence to support his convictions.  Specifically, he

contends for a variety of reasons that the Commonwealth failed to prove that he committed those

offenses.  He also argues that the Commonwealth did not establish he committed the offenses "on

the dates alleged."  For the reasons that follow, we affirm the trial court's judgment.[1]

---

        * This opinion is not designated for publication.  *See* Code § 17.1-413(A).

        [1] After examining the briefs and record in this case, the panel unanimously agrees that
because "the appeal is wholly without merit," oral argument is unnecessary.  *See* Code
§ 17.1-403(ii)(a); Rule 5A:27(a).  Moreover, the "dispositive issue[s]" in this appeal have been
"authoritatively decided, and the appellant has not argued that the case law should be overturned,
extended, modified, or reversed."  *See* Code § 17.1-403(ii)(b); Rule 5A:27(b).  Consequently, the
Court dispenses with oral argument.

A grand jury indicted the appellant for five felony offenses committed against N.B., his biological daughter.[3] Specifically, the offenses were: two counts of sodomy and one count of object sexual penetration against a child under the age of thirteen from on or about January 1, 2012, until May 25, 2018; indecent liberties by a parent with a child under fifteen from on or about January 1, 2012, until December 13, 2018; and sodomy of a child at least thirteen but less than eighteen by a family member from on or about May 26, 2018, until December 31, 2018. N.B. was born in May 2005 and was sixteen years old at the time of the appellant's trial in 2022.

N.B.'s mother, Tara Parkerson, stopped living with the appellant while she was pregnant with N.B. She married Shawn Taitano a few years later. Starting when N.B. was six or seven years old, N.B., Parkerson, Taitano, and N.B.'s three younger siblings lived on Cobbs Station Road in Northampton County. The appellant was living nearby but moved into the family's residence at some point. According to Parkerson, he did so to "help fix [it] up . . . and stuff." Parkerson was often away from the home working in Virginia Beach and sometimes remained there overnight. The appellant and Taitano cared for the children in her absence. Taitano testified that every day after work, the appellant used marijuana and drank alcohol until he was intoxicated. According to Taitano, when the appellant was intoxicated, he was "out of control" and beat the children. Eventually, Parkerson rented an apartment in Virginia Beach and stayed there most of the time. The appellant, Taitano, and the children remained in the residence on Cobbs Station Road for "at least a couple of months" before Taitano and the children moved to Virginia Beach to live with Parkerson.

---

[2] This Court recites the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).

[3] The victim is identified using initials to protect her privacy.

N.B. testified about three incidents that occurred at the residence on Cobbs Station Road. First, during the summer after she "had just turned [seven]," N.B. fell asleep on the living room couch next to the appellant with her head near the appellant's waist.[4] While asleep, N.B. felt the "tip of something" like skin in her mouth. She did not realize at the time what was in her mouth but "remember[ed] it feeling weird."

The second incident took place while N.B. was taking a nap in her mother's room. N.B. awakened to see the appellant lying in front of her. He used his hand to move N.B.'s hands "up and down" on something "hard" "attached to his body" that N.B. believed to be his "private area." The appellant's pants were pulled down to "uncover[]" the object in N.B.'s hands. N.B. felt "[p]anicked" and "confused."

The third incident occurred when the appellant entered N.B.'s bedroom at night. She was supposed to be sleeping but was actually watching television so she pretended to be asleep. The appellant removed N.B.'s clothes and positioned her on the bed on her knees while he was behind her. N.B. felt something hard that was "bigger than [a] hand or finger" "going in between [her] private area." It felt like the appellant "was pulling back and pushing forward," and N.B. noted the object moved up and back inside her body. N.B. believed that the appellant's penis entered her vagina. She did not say anything during the incident because she was scared and instead "pray[ed] for it to be over."

N.B. also testified about incidents of sexual abuse that occurred at her grandmother's house, which was near the residence on Cobbs Station Road. First, she described an incident in which the appellant applied lotion to her buttocks and used his fingers to rub it "all over in between" her "butt." N.B. could not specifically remember if it was after the incident involving the lotion, but she

_____

[4] N.B. testified that she believed she "had just turned [seven]" and that it happened "right after" she completed kindergarten or first grade.

recalled with regard to one incident that she cried and the appellant told her to stop so that she would not wake anyone else in the house.

In a later incident, the appellant entered N.B.'s bedroom at her grandmother's house, removed her pants and underwear, and lifted her shirt. After N.B. saw the appellant touching his penis, she felt "something sticky" on her stomach. The appellant told N.B. to go to the bathroom and "clean up." She did not report the appellant's conduct because she was "scared" and "ashamed," and "felt really dirty."

N.B. also lived with Connie Brady, her great-aunt, for a period of time. In an incident at Brady's home, the appellant put his mouth on N.B.'s "private area" and licked her vagina. On another occasion at Brady's home, immediately after N.B.'s twelfth birthday party, the appellant got "touchy" with N.B. while she was rinsing out her hair as she was getting ready for bed. During that encounter, he groped her buttocks. N.B. ran to the kitchen where Brady was. When Brady questioned N.B. about the condition of her hair, N.B. did not respond because the appellant was there and she found him to be "terrifying." N.B. was afraid of the appellant because he had beaten her and others in the past and was always the one "in control."

Finally, an incident occurred during a cookout at her grandmother's house. N.B. fell asleep at the table but later woke up in her bedroom with the appellant sitting on the bed next to her. He pulled down her pants, touched her "private area" with his fingers, and also put "his mouth" on or "near" that area. N.B. did not report the incident to her grandparents because she did not think they would believe her. According to N.B., she was thirteen years old at the time of that incident. This was the only incident that N.B. described as having occurred after her twelfth birthday. The appellant's sister testified that this cookout at which the incident took place was in 2017. N.B.'s grandmother testified that the cookout was in June 2019.

The reporting of the sexual offenses was put into context at the appellant's jury trial. N.B. told her friend A.A. about the sexual abuse in confidence in September 2020. At that time, N.B. was depressed and sad because she did not know how to handle the situation with the appellant. She had also tried to harm herself.

As noted, N.B. eventually moved into her mother's apartment in Virginia Beach. N.B. felt more relaxed there because she did not have to see the appellant as often. After N.B. had lived there with Parkerson for several months, A.A. and N.B. told Parkerson about the appellant's actions that occurred over a period of time. In October 2020, N.B. and Parkerson reported the crimes to the police. N.B. told Tara Leckel, a criminal investigator with the Northampton County Sheriff's Office, that the appellant had sexually abused her beginning when she was seven and continuing until she was thirteen.

When Investigator Leckel confronted the appellant about N.B.'s allegations, he said that during the time he resided in the home on Cobbs Station Road, he drank heavily, used marijuana and cocaine often, and lost his memory for "months at a time." He said that he would "wake up really early to go to work and then after work would start drinking and using drugs and just forget things that he had done."

N.B. was examined at the Children's Hospital of the King's Daughters Child Advocacy Center in November and December 2020. After a psychological assessment, Kristina Golden, Psy.D., a licensed clinical psychologist, diagnosed N.B. with post-traumatic stress disorder. At trial, the Commonwealth also introduced expert testimony from Jennifer Howe, the lead forensic specialist at the hospital's advocacy center. Howe explained that delayed disclosure by victims of child sexual abuse is "extremely common."

The appellant made a motion to strike the charges solely on the ground that the Commonwealth failed to prove that the crimes were committed within the periods of time charged in the indictment. The trial court denied the appellant's motion.

Testifying in his own defense, the appellant denied ever sexually abusing N.B. or touching her inappropriately. He admitted that he drank alcohol frequently after work and also smoked marijuana but said he did not recall telling the police that he experienced blackouts from consuming alcohol or drugs. He testified that he thought N.B. made up the claims of abuse because she was angry with him about various things, including his refusal to buy her a new iPhone.

After presenting evidence, the appellant renewed his motion to strike, again arguing only that the Commonwealth failed to establish the time periods charged in the indictment. The court denied the motion. A jury then found the appellant guilty of all the offenses. He was sentenced to a total of eighty-five years in prison with forty years suspended.

ANALYSIS

The appellant challenges the sufficiency of the evidence to sustain his convictions. "When presented with a sufficiency-of-the-evidence challenge in [a] criminal case[], [the appellate court] review[s] the evidence in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Commonwealth v. Barney*, __ Va. __, __ (Mar. 16, 2023) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). This review requires the Court to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn" from that evidence. *Bagley v. Commonwealth*, 73 Va. App. 1, 26 (2021) (quoting *Cooper v. Commonwealth*, 54 Va. App. 558, 562 (2009)). In conducting this review, the Court "does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Barney*, __Va. at __ (emphasis added) (quoting *Williams v. Commonwealth*,

278 Va. 190, 193 (2009)).  Instead, the "only 'relevant question is . . . whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Id.* at __ (emphasis added) (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)).  "If there is evidentiary support for the conviction[s], the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial."  *Lucas v. Commonwealth*, 75 Va. App. 334, 342 (2022) (quoting *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020)).

Further, "determining the credibility of the witnesses and the weight afforded [their] testimony . . . are matters left to the trier of fact, who has the ability to hear and see them as they testify."  *Raspberry v. Commonwealth*, 71 Va. App. 19, 29 (2019) (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)).  This Court will not disturb a credibility finding on appeal unless the "testimony was 'inherently incredible[] or so contrary to human experience as to render it unworthy of belief.'"  *Johnson v. Commonwealth*, 58 Va. App. 303, 315 (2011) (quoting *Robertson v. Commonwealth*, 12 Va. App. 854, 858 (1991)); *see Gerald v. Commonwealth*, 295 Va. 469, 486-87 (2018).  Simply put, if a witness testifies to facts "which, if true, are sufficient" to support the conviction and the fact finder bases its decision "upon that testimony[,] there can be no relief" in this Court.  *Smith v. Commonwealth*, 56 Va. App. 711, 718-19 (2010) (quoting *Swanson v. Commonwealth*, 8 Va. App. 376, 379 (1989)).

The appellant argues that N.B.'s testimony was inherently incredible, that the Commonwealth failed to exclude the reasonable hypothesis of innocence that N.B.'s testimony was fabricated, that the evidence was "insufficient to prove beyond a reasonable doubt that [the appellant] ever engaged in any inappropriate sexual activity with N.B," and that the Commonwealth failed to prove when the offenses occurred.

Before reviewing the challenges on the merits, this Court must determine whether each assignment of error was raised and properly preserved in the trial court. In this case, the appellant did not preserve most of the arguments he now raises on appeal.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. The primary reason for requiring a contemporaneous objection is to allow opposing counsel and the trial court a fair opportunity to address the challenge and prevent unnecessary appeals and retrials. *Bethea v. Commonwealth*, 297 Va. 730, 743-44 (2019); *Scialdone v. Commonwealth*, 279 Va. 422, 437 (2010); *Jones v. Commonwealth*, 71 Va. App. 597, 607 (2020).

In his motions to strike, the appellant argued *only* that the Commonwealth failed to prove that the crimes were committed during the periods of time charged in the indictment. This is a very specific and narrow challenge to the evidence. The appellant did not argue in either a motion to strike or a motion to set aside the verdict that N.B.'s testimony was inherently incredible or fabricated, or that the Commonwealth failed to prove that he had any inappropriate sexual contacts with the victim. Accordingly, he has waived appellate review of these arguments, and we will not consider them on the merits.[5] *See Bethea*, 297 Va. at 744; *Jones*, 71 Va. App. at 607.

The only argument left that is properly before this Court is that "the Commonwealth failed to prove with any specificity *when* the alleged offenses occurred." (Emphasis added). We hold that the trial court correctly rejected this argument. Although N.B. was unable to provide a specific date when each of the charged acts of sexual abuse occurred, her testimony was sufficient to identify a

---

[5] The appellant does not ask this Court to invoke the good cause or ends of justice exceptions to Rule 5A:18, and we will not apply the exceptions sua sponte. *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (en banc), *aff'd by unpub'd order*, No. 040019 (Va. Oct. 15, 2004), *cited with approval in Jones v. Commonwealth*, 293 Va. 29, 39 n.5 (2017).

particular event associated with each indictment, and the evidence proved that each event took place within the time frame alleged in the indictment. The Commonwealth therefore met its burden of proof regarding the timing and occurrence of each offense.

Virginia law clearly outlines the requirements for an indictment. Code § 19.2-220 provides in pertinent part that an indictment "shall be a plain, concise and definite written statement" identifying the defendant, describing the charged offense, identifying the location of the offense, and "reciting that the accused committed the offense on or about a certain date." Code § 19.2-226(6) further makes clear that an indictment is not invalid "[f]or omitting to state, or stating imperfectly, the time at which the offense was committed when time is not of the essence of the offense." In sexual offenses involving younger victims, where "there is no dispute that the crime, assuming it occurred, involved a minor child" younger than the age specified by the applicable statute, "[t]he allegation of time . . . is not of such constitutional import because time was not of the essence of the offense charged." *Clinebell v. Commonwealth*, 3 Va. App. 362, 367 (1986), *aff'd in part and rev'd in part on other grounds*, 235 Va. 319 (1988).[6]

Although N.B. did not provide specific dates for the offenses, the law does not require such specificity to sustain a defendant's convictions for these sex crimes committed against a child. To the contrary, this Court has held that requiring a child to "be able to recall the exact date an event occurred in his or her life in order to obtain a conviction would too often preclude prosecutions in this type of case where the victims are children and the crimes are not discovered until some time after their commission." *Clifford v. Commonwealth*, 48 Va. App. 499, 518 (2006) (quoting *Marlowe v. Commonwealth*, 2 Va. App. 619, 625-26 (1986)), *rev'd in part on other grounds*, 274 Va. 23 (2007). "The Commonwealth's case would too often fail because it

---

[6] In *Clinebell*, 235 Va. at 321, the Supreme Court "affirm[ed] the holding and rationale of" this Court rejecting an argument "that the indictments were fatally defective because they failed to specify the exact dates of the alleged offenses."

could not specify the exact date of the offense against the child. It is this same reasoning which permits the Commonwealth to prove the commission of the crime charged on a date different than that alleged in the indictment." *Id.* at 518-19 (quoting *Marlowe*, 2 Va. App. at 626). Consequently, a defendant's convictions will not be reversed even if the Commonwealth failed to prove the offenses against a child occurred within the time periods recited in the indictment. *See Farhoumand v. Commonwealth*, 288 Va. 338, 351 (2014) (explaining that, in a case involving sexual crimes against a child, "the Commonwealth may prove the commission of a crime charged on a date different from that alleged in the indictment" (quoting *Harris v. Commonwealth*, 185 Va. 26, 33 (1946))); *Raja v. Commonwealth*, 40 Va. App. 710, 721 (2003) (applying the same principle to the dates in a warrant of arrest for stalking).

Here, N.B. testified that the only one of the five offenses that occurred after her twelfth birthday was the cookout incident, which she thought took place when she was thirteen years old. That incident served as the basis for the appellant's conviction under Code § 18.2-361, the only charged offense for which the victim's precise age mattered and there was competing evidence before the jury. In order to elevate the offense to a Class 3 felony, that statute requires the Commonwealth to prove that the victim was at least thirteen but under eighteen years old. Code § 18.2-361(B). Although N.B. was born in 2005 and would not have been thirteen years old in 2017, when the appellant's sister claimed the cookout occurred, the jury was free to reject her testimony on that point. *See Raspberry*, 71 Va. App. at 29. Instead, the jury could properly credit N.B.'s own testimony that she was thirteen at the time, which was supported by the testimony of N.B.'s grandmother that the cookout occurred later than 2017. *See Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019) ("[T]he finder of fact, 'who determines the credibility of the witnesses and the weight accorded their testimony, may accept or reject the

testimony in whole or in part.'" (quoting *Perkins v. Commonwealth*, 31 Va. App. 326, 331 (2000))).

Of the appellant's remaining four convictions, three of them required the Commonwealth to prove that N.B. was under thirteen years old at the time of the offense, and the final conviction required the Commonwealth to prove that she was under fifteen years old. The time periods in the indictment begin when N.B. was six years old and end when she was twelve or thirteen years old, depending on the charge. The jury was entitled to credit N.B.'s testimony that she was between seven and twelve years old during each of the non-cookout incidents she described. *See Nobrega v. Commonwealth*, 271 Va. 508, 518 (2006) (explaining that the credibility of a child witness is determined by the fact finder). *See generally Wilson v. Commonwealth*, 46 Va. App. 73, 87 (2005) ("[A] conviction for rape and other sexual offenses may be sustained solely upon the uncorroborated testimony of the victim."). Based on her testimony, the jury could properly conclude that the Commonwealth proved the appellant committed the offenses within the time frames charged in the indictment and the ages required under the statutes.

CONCLUSION

The evidence was sufficient to establish that the offenses occurred in the necessary time periods specified by statute and recited in the indictment. The appellant forfeited the right to appellate review of his remaining sufficiency challenges by not raising those arguments in the trial court. Consequently, we affirm the judgment of the trial court.

*Affirmed.*