COURT OF APPEALS OF VIRGINIA

Present:   Judges O'Brien, Ortiz and Senior Judge Humphreys
Argued at Lexington, Virginia


JOHN WALTER-LOUIS GATES

                                                MEMORANDUM OPINION* BY
v.        Record No. 1333-23-3                    JUDGE DANIEL E. ORTIZ
                                                    OCTOBER 8, 2024
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ROCKBRIDGE COUNTY
Christopher B. Russell, Judge

John S. Koehler (The Law Office of James Steele, PLLC, on brief),
for appellant.

Stephen J. Sovinsky, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a jury trial, the trial court convicted John Walter-Louis Gates of indecent liberties

with a child in a custodial or supervisory relationship and aggravated sexual battery by a parent or

stepparent.  The trial court sentenced Gates to 23 years' imprisonment with 13 years suspended.  On

appeal, Gates argues that the trial court erred in denying his motion for a bill of particulars and in

admitting into evidence his prior conviction of a sexual offense against a child.  We disagree and

affirm the trial court's judgment.

BACKGROUND

"On appeal, we review the evidence in the 'light most favorable' to the Commonwealth."

*Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Commonwealth v.*

*Hudson*, 265 Va. 505, 514 (2003)).  So "we must discard the evidence of the accused in conflict

with that of the Commonwealth, and regard as true all the credible evidence favorable to the

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

Gates and Heather Morgan married on October 20, 2021, two days after he was released from serving a prison sentence. After his release, Gates was required to remain on home electronic monitoring and live with his mother for three months, but he was often at Morgan's home. Morgan understood that Gates "had to be supervised" around children.

One of Morgan's daughters, C.M., was almost 13 years old at the time of the marriage. C.M. regarded Gates as her "step-dad" and trusted him. Morgan's ex-mother-in-law lived in Morgan's home, but she was in poor health and rested in bed at times during the day.

In January 2022, Gates's period of electronic monitoring ended and he began staying at Morgan's home every night. While at Morgan's home, Gates touched C.M.'s buttocks while she was bending over to pick up laundry or a broom. With his hand on her buttocks, Gates said that she "would have a butt like [her] mother's." He also "sometimes" commented that she had a "sexy butt." The situation made C.M. feel "weird." C.M. was confused and did not know what to do about it.

C.M. smoked marijuana with Gates "almost every morning" when Morgan was not at home. After smoking marijuana with C.M. on a morning about two weeks after touching C.M.'s buttocks, Gates offered to give her an ounce of marijuana and a smoking device if she would "suck his dick." She refused. Gates then offered her one-half ounce of marijuana if she would watch him masturbate. C.M. agreed and watched Gates masturbate until he ejaculated into a trash can. At the time of the incident, C.M.'s grandmother was asleep and her two younger siblings were at her aunt's home. C.M. did not recall exactly when the incident occurred. She described feeling weird

about the incident. She did not tell her mother what happened; Gates told her that "[m]om couldn't find out."

Morgan and Gates's marriage crumbled, and they broke up "on the night going into May 1," 2022. Morgan kicked him out of her house because she was "done" with the relationship.

During an argument with Morgan on June 13, 2022, Morgan's elder daughter commented that "at least [Gates] didn't swing his dick at" C.M. Upset by the revelation, Morgan contacted the police.

When questioned in a forensic interview, at first C.M. said only that Gates had touched her buttocks, but did not report the incident involving the masturbation and marijuana because she thought she would get in trouble for the drug use. During a second interview, however, C.M. reported that Gates had her watch him masturbate after smoking marijuana with her.

In an interview with police on June 17, 2022, Gates denied the allegations and repeated 20 times that he had "never been around the children" except for one time when he ran into them at Walmart and walked the other way. The terms of Gates's probation prohibited him from being with children. Gates said there were no incriminating photographs on his cellphone and allowed the police to search it. The police found a photo of Gates and C.M. together; the photo was dated March 22, 2022. When the police found photos of Gates with C.M. and other children at Christmastime, Gates told them that he "had permission" and "was approved" by his probation officer to be with the children. In fact, Gates's probation officer had granted no such permission or approval. The photos were in a folder of "recently deleted" items on the phone.

A Rockbridge County grand jury charged that Gates, "on or about October 18, 2021 through and including April 30, 2022," took indecent liberties with C.M. A second indictment charged that Gates committed aggravated sexual battery on C.M. "on or about October 18, 2021." Gates moved for a bill of particulars concerning the indecent liberties charge, requesting the "specific date and

time of the alleged offense." After a hearing, the trial court denied the motion for a bill of particulars. Before Gates's jury trial began, the trial court granted the Commonwealth's motion to amend the aggravated sexual battery indictment to charge that the offense occurred within the same period defined by the indecent liberties indictment.

At trial, the Commonwealth introduced a redacted copy of Gates's 2014 conviction of carnal knowledge of a minor. The redacted order reflected the fact of Gates's conviction, but not his sentence. The trial court instructed the jury that the conviction order was "not proof that he did anything he's charged with in these matters. . . . It's offered for proof of some surrounding circumstances . . . ." At the close of the evidence, the trial court also instructed the jury: "Evidence that the defendant was previously convicted of another sexual offense is not proof that he committed these offenses, and such evidence may not be considered by you in determining whether the defendant committed the offenses for which he is on trial."

The jury found Gates guilty as charged, and the trial court convicted him. This appeal followed.

## ANALYSIS

### I. Bill of Particulars

Gates argues that the trial court erred in denying his motion for a bill of particulars to specify the dates of the offenses. He maintains that without such information he could not rebut the Commonwealth's evidence and present an alibi defense. "On appeal of the denial of a request for a bill of particulars, the appellate court reviews the trial court's decision for an abuse of discretion." *Rams v. Commonwealth*, 70 Va. App. 12, 41 (2019).

Code § 19.2-230 states that a trial court "may direct the filing of a bill of particulars." "The purpose of a bill of particulars is to state sufficient facts regarding the crime to inform an accused in advance of the offense for which he is to be tried. He is entitled to no more."

- 4 -

*Swisher v. Commonwealth*, 256 Va. 471, 480 (1998) (quoting *Hevener v. Commonwealth*, 189 Va. 802, 814 (1949)). "[A] defendant is not entitled to a bill of particulars as a matter of right." *Quesinberry v. Commonwealth*, 241 Va. 364, 372 (1991). "[W]hether to require the Commonwealth to file a bill of particulars is a matter that falls within the sound discretion of the trial court . . . ." *Walker v. Commonwealth*, 258 Va. 54, 63 (1999). "[W]here the indictment 'give[s] the accused "notice of the nature and character of the offense charged so he can make his defense[,]" a bill of particulars not required.'" *Rams*, 70 Va. App. at 42 (second and third alterations in original) (quoting *Strickler v. Commonwealth*, 241 Va. 482, 490 (1991)).

C.M. could not identify the exact date that the offenses occurred. But the evidence demonstrated that they occurred after Morgan and Gates married in October 2021 and before their separation at the end of April 2022, as charged in the indictments. "In sexual offenses, where 'there is no dispute that the crime, assuming it occurred, involved a minor child' or a child beneath the age specified by the applicable statute, '[t]he allegation of time . . . is not of such constitutional import because time was not of the essence of the offense charged.'" *Clifford v. Commonwealth*, 48 Va. App. 499, 516 (2006) (alterations in original) (quoting *Clinebell v. Commonwealth*, 3 Va. App. 362, 367 (1986), *aff'd in part and rev'd in part on other grounds*, 235 Va. 319 (1988)), *rev'd on other grounds*, 274 Va. 23 (2007).

Here, time was not of the essence for the aggravated sexual battery and indecent liberties crimes with which Gates was charged. The indictments sufficiently advised him of the pending charges so that he could make his defense. We thus conclude that the trial court did not abuse its discretion in denying Gates's motion for a bill of particulars.

## II. Admission of Prior Conviction

Gates contends that the trial court erred in allowing the Commonwealth to introduce his prior conviction. He maintains that the undue prejudice of the conviction outweighed its

purported probative value.  Gates also argues that given the instructions by the trial court not to use the conviction as evidence of Gates's propensity to commit sexual offenses, the evidence was not relevant for any purpose.

Before trial, the Commonwealth gave notice of its intention to introduce Gates's prior conviction of carnal knowledge of a minor.  Gates objected, asserting that the prejudice associated with introducing the conviction order or information that he was a sex offender would strongly outweigh any probative value.  After weighing the prejudice, the trial court permitted the Commonwealth to introduce a redacted conviction order, reflecting the fact of Gates's conviction but not his punishment.  At the same time, the trial court twice instructed the jury that the conviction could not be used as evidence that he committed the crimes charged in the indictment.

The way "a trial is 'conduct[ed] . . . is committed to the trial judge's discretion.'"  *Hicks v. Commonwealth*, 71 Va. App. 255, 270 (2019) (alterations in original) (quoting *Breeden v. Commonwealth*, 43 Va. App. 169, 185 (2004)).  "A '[trial] court's decision to admit or exclude evidence' is also reviewed 'under an abuse of discretion standard.'"  *Id.* (quoting *Herndon v. Commonwealth*, 280 Va. 138, 143 (2010)).  "In evaluating whether a trial court abused its discretion . . . , 'we do not substitute our judgment for that of the trial court.  Rather, we consider only whether the record fairly supports [that] action.'"  *Id.* (alterations in original) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)).  "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred."  *Id.* (quoting *Thomas v. Commonwealth*, 44 Va. App. 741, 753, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005)).

Under Virginia Rule of Evidence 2:413(a), "[i]n a criminal case in which the defendant is accused of a felony sexual offense involving a child victim, evidence of the defendant's conviction of another sexual offense or offenses is admissible and may be considered for its

bearing on any matter to which it is relevant." But "[e]vidence offered in a criminal case pursuant to the provisions of this Rule is subject to exclusion in accordance with the Virginia Rules of Evidence, including but not limited to Rule 2:403." Va. R. Evid. 2:413(e). Under Rule 2:403, "[r]elevant evidence may be excluded if . . . the probative value of the evidence is substantially outweighed by . . . the danger of unfair prejudice."

"Generally, evidence of a defendant's other criminal acts is 'inadmissible to prove guilt of the crime for which the accused is on trial . . . .'" *Blankenship v. Commonwealth*, 69 Va. App. 692, 698 (2019) (quoting *Gonzales v. Commonwealth*, 45 Va. App. 375, 380 (2005)). This default rule prevents the introduction of prior bad acts to prove the defendant's propensity to perform a specific bad act at issue in the case. *See id.*; Va. R. Evid. 2:404(b). But under Rule 2:413, the legislature established an exception, permitting the Commonwealth to introduce "evidence in the form of a defendant's prior conviction in prosecutions for felony sexual offenses against a child 'for the purpose of establishing propensity to commit other sexual offenses.'" *Blankenship*, 69 Va. App. at 701 (quoting *United States v. Kelly*, 510 F.3d 433, 437 (4th Cir. 2007)).

Under Rule 2:413(a), Gates's prior conviction could permissibly have been introduced to show that he had a propensity to commit sexual offenses. But here, the Commonwealth supported and the court provided jury instructions barring the jury from considering the conviction for a propensity purpose. "[W]e presume juries follow the instructions of the trial court." *Couture v. Commonwealth*, 51 Va. App. 239, 247 (2008). And the Commonwealth's concession that the evidence could not be used for a propensity purpose becomes the law of the case. *See Smith v. Commonwealth*, 296 Va. 450, 461 (2018) ("[I]nstructions given without objection become the law of the case and thereby bind the parties in the trial court and this Court

- 7 -

on review." (quoting *Wintergreen Partners, Inc. v. McGuireWoods, LLP*, 280 Va. 374, 379 (2010))).

Here, the Commonwealth asserts that the conviction was introduced not as propensity evidence but as context to the Commonwealth's case—showing why Gates was on probation, illustrating why his probation limited his contact with children, and setting the stage for evidence that Gates lied repeatedly to police officers about his contact with children. The Commonwealth argues that all of this context supported the ultimate conclusion that Gates was conscious of his own guilt, which is relevant to whether he committed the acts at issue. Because of his prior conviction for carnal knowledge of a minor, Gates was prohibited from contact with children. When confronted with C.M.'s allegations, Gates denied—20 times—that he had been with Morgan's children. After the police found photographs of him and the children on Gates's phone, he falsely claimed that his probation officer had granted permission for the contact.

The trial court did not abuse its discretion in finding that Gates's conviction order was relevant for the purpose of providing context to the Commonwealth's case. Rule 2:413(a) provides that a prior conviction "is admissible and may be considered for its bearing on *any matter* to which it is relevant." Va. R. Evid. 2:413(a) (emphasis added). We see no reason why this broad language could not encompass admission to provide context to the facts at issue.

We turn, then, to Rule 2:413(e), which notes that a trial court must still weigh the probative value of a prior conviction against its incidental prejudice under Rule 2:403. To be excluded, "the danger of unfair prejudice" must "substantially outweigh[]" the evidence's probative value. Va. R. Evid. 2:403(a). "It is well-settled that '[t]he responsibility for balancing the competing considerations of probative value and prejudice rests in the sound discretion of the trial court.'" *Walker v. Commonwealth*, 302 Va. 304, 320 (2023) (alteration in original) (quoting *Ortiz v. Commonwealth*, 276 Va. 705, 715 (2008)). "'[U]nfair prejudice' refers to the tendency

of some proof to inflame the passions of the trier of fact, or to invite decision based upon a factor unrelated to the elements of the claims and defenses in the pending case." *Id.* (alteration in original) (quoting *Lee v. Spoden*, 290 Va. 235, 251 (2015)). The term "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.* at 320-21 (quoting *Lee*, 290 Va. at 251-52).

Here, even considering the evidence for the narrow purpose of providing context, as required by the jury instruction, we conclude that the trial court did not abuse its discretion in admitting the conviction. First, we consider the probative value of the evidence. *See* Va. R. Evid. 2:403(a). Gates's prior conviction set the stage for Morgan's testimony that she married Gates two days after he left prison and that he did not live with her at first because he was on an ankle monitor. The existence of the conviction provided context as to why Gates could not be around children, and thus highlighted the significance of his later lies to police officers that he had not been around C.M. or other children. The conviction, though it did not include the specific conditions of probation, was at least somewhat probative for these purposes.

We now turn to any unfair prejudice arising from the evidence. *See* Va. R. Evid. 2:403(a). We acknowledge, as did the trial court, that evidence of a prior conviction, particularly of a sexual offense related to a minor, is prejudicial to the defendant, and likely to inflame a jury's emotions. *See Walker*, 302 Va. at 320. But given the other relevant evidence of Gates's terms of probation—particularly that he could not be around children, implying a prior criminal act against a child—the incremental prejudice of introducing the conviction record itself was relatively minor. We thus cannot say that no reasonable jurist could have concluded that the probative value of the conviction was not substantially outweighed by the added prejudice. *See* Va. R. Evid. 2:403; *Hicks*, 71 Va. App. at 270. This is particularly true where the jury was twice instructed not to use the prior conviction as evidence of guilt, and we presume the jury followed

those instructions. *Couture*, 51 Va. App. at 247. Thus, the trial court did not abuse its discretion in admitting the evidence of Gates's prior conviction.

## CONCLUSION

Because the trial court did not abuse its discretion in either denying Gates's motion for a bill of particulars or permitting the admission of his prior conviction, we affirm the trial court's judgment.

*Affirmed.*